2022 PA Super 160

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OBADIAH MOSER | : | |
| | : | |
| Appellant | : | No. 426 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 17, 2022,
in the Court of Common Pleas of Lycoming County,
Criminal Division at No(s): CP-41-CR-0001544-2020.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY KUNSELMAN, J.: **FILED SEPTEMBER 19, 2022**

Obadiah Moser appeals from the judgment of sentence of 80 to 160 years of incarceration entered following his conviction of numerous sexual offenses against a minor victim, R.H. He challenges the denial of his motion to suppress evidence and the discretionary aspects of his sentence. We affirm.

On November 11, 2020, police charged Moser based on R.H.'s report that when R.H. was ages 12 to 14, Moser sexually abused him eleven times. The case proceeded to a non-jury trial on October 20 and 21, 2021. During trial, Moser orally moved to suppress two deleted "Notes" recovered from his

_____

[*] Former Justice specially assigned to the Superior Court.

cellular phone.[1] The trial court recessed, and a different judge heard the motion.

The evidence relevant to the suppression issue is as follows. Police discovered the Notes while executing two search warrants. In the first search, police seized electronics from Moser's house, including an iPhone. In the second, Pennsylvania State Police digital forensic examiner Stefan Gerneth seized digital information from the iPhone, including the Notes at issue. Both Notes were created during the time of the reported abuse, and both had been deleted by the time they were seized.[2]

The affidavit of probable cause in the second search warrant included the following information about Moser's use of technology:

> [I interviewed R.H. on October 28, 2020.] RH told me during the interview that he would communicate with MOSER via cell phone. RH said that MOSER would constantly message him through different social medias such as Snapchat, Facebook messenger.[3]
>
> RH said that in these conversations, MOSER would talk to him about hanging out and seeing what he doing. RH stated that if he

---

[1] The trial court permitted the late suppression motion in the interest of justice because Moser received the "Notes" from the Commonwealth after the time to file an omnibus motion had expired. *See* Pa.R.Crim.P. 579(A).

[2] The Notes themselves were not included in the record on appeal. The Commonwealth represented at the suppression hearing that Moser wrote them in the second person and identified R.H. by name. N.T., Suppression, 10/20/21, at 22–23. The trial court found similarities between the language of the Notes and Moser's testimony. N.T., Trial, 10/21/21, at 122–123.

[3] The affidavit of probable cause in the first search warrant provided that R.H. said that Moser communicated with him "through Facebook messenger and text." Search warrant, 11/4/20, at 3.

did not answer MOSER, MOSER would then message his other family members looking for him.

On 11/05/2020, I interviewed Obadiah MOSER after he was mirandized and waived his rights. MOSER told me that he did talk to RH through different social medias. MOSER said that he first talked to him on Facebook messenger but later deleted it.

MOSER told me that he then spoke to RH'[s] parents and was told that these kids were now using Snapchat. MOSER told me that he had downloaded [Snapchat] then and was communicating with RH through that. MOSER said that he did talk to RH a lot through messaging.

*     *     *

Based off my training and experience, I know that smartphone apps can also be accessed through desktop computers and laptops. I also know that it is common for people to save pictures and conversations on separate devices.

Based on my previous child sex cases and child predator trainings, I have learned that it is common for offenders to possess[] photographs of their victims on their media devices. I also learned it is common for them to communicate to the victims on different devices other than their main communicative device.

At this time, I request a search warrant be issued for the items listed in the "Items to be searched for" portion of the application and all the data contained within the Iphone.

Search warrant, 11/24/20, at 2–3.

The second search warrant authorized a search of, *inter alia*, "[a]ll the data within" Moser's iPhone. ***Id.*** at Attachment A. The items to be searched for and seized were:

Any and all calls/messages/conversations/photos/videos that establish or provide details regarding the nature of the relationship between [Moser] and the victim (RH) relating to violations of Title 18: Section 3121 A(1) – Rape by forcible Compulsion and Title 18: Section 6301A(1)(i) – corruption of a minor and other related charges.

*Id.*

At the suppression hearing, the Commonwealth called Mr. Gerneth, who testified as an expert in computer forensics. He explained the function of the Notes application: "In previous investigations that I performed, the Notes app typically holds a message or some kind of information. There was an investigation[,] specifically it was a suicide[,] and within that Note[s] section was a message to the family detailing why she decided to commit suicide." N.T., Suppression, 10/20/21, at 11–12. He explained why he looked in the Notes folder from the data extraction in this case:

> Very commonly in our data extractions we will find messages or messages to other people that are written out within the Notes app, they just were not sent. It's similar to writing a letter you just don't put in the post office. A lot of times people save messages in the notes or create messages or write out their thoughts of things they want to tell people and they just haven't done that. It's just in the notes, they just use it as like a notebook and write everything down to -- to maybe send it out in the future.

*Id.* at 14.

Moser argued that the second search warrant did not authorize the seizure of the Notes because the Notes were not "messages." Alternatively, Moser reasoned that if the warrant permitted police to seize the Notes, then it was overbroad because there was no probable cause to seize the Notes.

The Commonwealth responded that under a common-sense reading, the warrant authorized police to seize the Notes because a "message" can mean a "note or memo," including an unsent draft. Additionally, the Commonwealth

- 4 -

submitted that the warrant was not overbroad because the police could seize only items that detailed Moser's relationship with R.H.

The suppression court denied Moser's motion to suppress. The court first concluded that the search did not exceed the scope of the second search warrant because Moser's deleted Notes were "messages" or "conversations":

> [T]he courts look with great caution on warrants addressed to cell phones. A recent case found that a general consent for electronic devices did not constitute a consent for the search of the phone.
>
> In this particular case, however, the Court cannot ignore the purpose of the search warrant, nor the language. The purpose of the search warrant was to locate data that detailed the nature of the relationship between [Moser] and [R.H.]
>
> The items to be seized included among others "messages and conversations". A message does not need to be communicated; it can be left for a recipient, not then available. Commonwealth is correct that a synonym for a message includes a note or memo. A conversation constitutes the imparting of information. A synonym includes, as indicated, imparting or reporting. Furthermore, the Court finds that a communication also includes what is known as intrapersonal communication or self-talk.

Suppression Court Opinion, 10/27/21, at 2.[4] The court also concluded that Moser's overbreadth challenge failed due to the warrant's limiting language:

> The court cannot find in this case that the warrant is overbroad particularly because of the language set forth in the warrant that qualifies or conditions it. Specifically, the items to be seized include all items referenced that establish or provide details regarding the nature of the relationship between [Moser and R.H.]

_____

[4] The suppression court announced its ruling in open court and later entered the above-cited opinion duplicating the announcement. The judge who presided over the suppression hearing subsequently retired and did not draft the Rule 1925(a) opinion.

*Id.* at 3–4. Therefore, the suppression court denied Moser's motion to suppress the two Notes.

The trial resumed, and the Commonwealth presented the Notes as evidence. The trial court then found Moser guilty of 48 offenses. On February 17, 2022, the court sentenced Moser to an aggregate term of 80 to 160 years of incarceration, followed by three years of probation.[5]

Moser timely appealed.[6] Moser and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Moser raises two issues for our review:

I. Did the lower court err by denying [Moser's] motion to suppress "Notes Application" information from his cell phone where the warrant authorized searching for conversations, photos and videos or, in the alternative, was the warrant overbroad?

II. Did the trial court abuse its discretion when imposing sentence of 80 to 160 years [of] incarceration for counts of rape of and involuntary deviate sexual intercourse with a child?

Moser's Brief at 7 (capitalization omitted).[7]

_____

[5] At Counts 1–3, rape of a child, and Counts 41–45, involuntary deviate sexual intercourse, the court imposed mandatory minimum sentences of 10 to 20 years, to run consecutively. The Commonwealth had provided Moser notice of the mandatory minimum sentences. N.T., 2/17/22, at 26.

[6] Moser's notice of appeal erroneously states that he is appealing from the judgment of sentence and the verdict of guilt. The appeal lies only from the judgment of sentence. *Commonwealth v. O'Neill*, 578 A.2d 1334, 1335 (Pa. Super. 1990).

[7] Inexplicably, the Commonwealth did not file an appellate brief or letter indicating that no brief would be filed.

## I. Suppression

Moser's first issue mirrors his argument before the suppression court. We follow these well-settled principles:

> our standard of review for the denial of a suppression motion is *de novo* and is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole. When the sole issue on appeal relates to a suppression ruling, our review includes only the suppression hearing record and excludes from consideration evidence elicited at trial.

**Commonwealth v. Green**, 265 A.3d 541, 550–51 (Pa. 2021) (citations and quotation marks omitted).

### A. Scope of Warrant

Moser first contends that the Notes were outside the scope of what police could search for and seize under the language of the second search warrant.

Both the federal and Pennsylvania constitutions protect citizens from unreasonable searches and seizures by requiring search warrants. U.S. Const. amend. IV; Pa. Const. Art. I, § 8. The Fourth Amendment requires warrants to be issued "particularly describing the place to be searched, and the person or things to be seized." **Commonwealth v. Turpin**, 216 A.3d 1055, 1063–64 (Pa. 2019) (quoting **Maryland v. Garrison**, 480 U.S. 79, 84 (1987)). Similarly, the Pennsylvania Constitution requires that a search warrant

describe things to be seized "as nearly as may be" to prevent general, exploratory searches and "the seizure of one thing under a warrant describing another." *Commonwealth v. Waltson*, 724 A.2d 289, 291 (Pa. 1998) (quoting *Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989)). "As to what is to be taken, nothing is left to the discretion of the officers executing the warrant." *Commonwealth v. Matthews*, 285 A.2d 510, 514 (Pa. 1971) (emphasis deleted) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).

However, "search warrants should 'be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" *Green*, 265 A.3d at 550 (quoting *Commonwealth v. Johnson*, 240 A.3d 575, 584–85 (Pa. 2020) (OAJC)). "It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search." *Commonwealth v. Gannon*, 454 A.2d 561, 565 (Pa. Super. 1982) (quoting *Commonwealth ex rel. Stoner v. Myers*, 185 A.2d 806, 808 (Pa. Super. 1962)). For example, police could seize a kitchen knife during a warranted search for "one pocket knife." *Matthews*, 285 A.2d at 514.

Here, the affidavit of probable cause in the second search warrant described how Moser would contact R.H. through text messages and social media including Facebook Messenger and Snapchat. Accordingly, the warrant was issued to search all the data on Moser's iPhone (and other devices) for

"Any and all calls/messages/conversations/photos/videos" concerning his relationship with R.H.

We conclude that the police could seize the Notes in their search under the second warrant. The purpose of the search was to recover cellular phone files that showed Moser's relationship with R.H., described as calls, messages, conversations, photos, and videos. The warrant was not limited to files within certain applications, nor did it specify only finalized messages. As Mr. Gerneth testified, people commonly use the Notes Application to compose messages. Under these facts, the Notes had at least a reasonable relation to the purpose of the search, and the suppression court did not err in denying Moser's motion to suppress based on the scope of the warrant.

## B. Overbreadth

Moser next argues that if that the second warrant authorized police to seize the Notes, then the warrant was overbroad.[8]

A warrant is unconstitutionally overbroad if there is an "unreasonable discrepancy" between the items sought and the items for which there is probable cause to search and seize. *Green*, 265 A.3d at 550 (quoting *Johnson*, 240 A.3d at 584–85). The overbreadth doctrine "applies equally to a search of digital space as it does for a physical search." *Id.* at 553–54.

---

[8] To the extent that Moser separately argues a lack of particularity, we note that he did not raise this constitutional challenge in his Rule 1925(b) statement.

For example, a warrant that authorizes the search and seizure of a flash drive and "any contents contained therein," without limitation for non-criminal use of the flash drive would be overbroad. *See Commonwealth v. Orie*, 88 A.3d 983, 1008 (Pa. Super. 2014); *see also United States v. Wecht*, 619 F. Supp. 2d 213, 246 (W.D. Pa. 2019) (finding overbroad a warrant authorizing seizure of all data on a computer). However, an overbreadth challenge fails if a warrant for a search of an entire digital device has "self-limiting language" that allows police to search only for evidence of the crime for which there is probable cause. *E.g.*, *Green*, 265 A.3d at 554–54; *Orie*, 88 A.3d at 1009–10 (finding that a warrant with limiting language for the search of a computer cured any overbreadth defect in a prior warrant for the seizure of the computer, distinguishing *Wecht*).

Here, the second warrant allowed police to search the entirety of the data in Moser's cellular phone. However, the warrant contained limiting language allowing police to seize only certain files:

> that establish or provide details regarding the nature of the relationship between [Moser] and the victim (RH) relating to violations of Title 18: Section 3121 A(1) – Rape by forcible Compulsion and Title 18: Section 6301A(1)(i) – corruption of a minor and other related charges.

Search warrant, 11/24/20, at Attachment A.

We agree with the suppression court that this limiting language is sufficient to defeat Moser's overbreadth challenge. The warrant did not give the police discretion to search for any evidence of wrongdoing, just those files that were related to the relationship between Moser and R.H. As concluded

*supra*, the Notes were reasonably related to the purpose of the search. The warrant was not overbroad in permitting police to search the notes/memos folder for this evidence. Therefore, the suppression court did not err in denying Moser's motion to suppress based on the breadth of the warrant.

## II. Sentencing Discretion

In his second issue, Moser challenges the discretionary aspects of his sentence, specifically the order that all eight mandatory minimum sentences run consecutively.

> Challenges to the discretionary aspects of sentence are not appealable as of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. ***Id.*** An appellant must satisfy all four requirements. ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

***Commonwealth v. Miller***, 275 A.3d 530, 534 (Pa. Super. 2022).

Here, Moser filed a timely notice of appeal and included a Rule 2119(f) statement in his brief. However, he has failed to preserve his challenge by objecting at sentencing or by filing a motion to reconsider and modify his sentence. Therefore, he has not properly invoked this Court's jurisdiction to

review his claim. ***Commonwealth v. Padilla-Vargas***, 204 A.3d 971, 975–76 (Pa. Super. 2019). We cannot address the merits of this issue.[9]

### III. Conclusion

The suppression court did not err in denying Moser's motion to suppress. Moser waived his challenge to the discretionary aspects of his sentence. Therefore, we will affirm Moser's judgment of sentence.

Judgment of sentence is affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2022

---

[9] Even if we had jurisdiction to rule on this claim, it would have no merit. ***See Commonwealth v. Taylor***, 277 A.3d 577, 595 (Pa. Super. 2022) (noting that a defendant is not entitled to a "volume discount" for multiple offenses).