J-A18038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CYRUS SAM SUKHADIA | : | No. 1230 WDA 2022 |

Appeal from the Suppression Order Entered September 23, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001889-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CYRUS SAM SUKHADIA | : | No. 1231 WDA 2022 |

Appeal from the Suppression Order Entered September 23, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0002897-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: November 8, 2023**

The Commonwealth of Pennsylvania appeals the order granting Cyrus Sam Sukhadia's motion to suppress in two cases. The suppression court found that two search warrants for the contents of Sukhadia's cell phone were unconstitutionally overbroad. We affirm.

## Case Posture

This case began in 2014 with an investigation into Sukhadia, who was then a police recruit. The suppression court found the following facts leading up to the issuance of the first warrant:

> On October 17, 2014, Detectives James Simunovic and Jeffrey Abraham, of the City of Pittsburgh Police Department, met with [Sukhadia] in order to conduct an interview regarding his arrest on charges which alleged that [Sukhadia] provided alcohol to an underage female and communicated with her through Tinder, a social media communication application. [Sukhadia] was placed in a soundproof interview room. After being administered **Miranda** warnings, [Sukhadia] chose not to speak with the officers and the interview was terminated.
>
> Simunovic also took custody of [Sukhadia's] cellular telephone from the arresting officer and placed it on his desk. [Sukhadia] did not consent to a search of the phone's contents. Abraham subsequently wrote an application for a search warrant to examine the contents of [Sukhadia's] cellular telephone. The Honorable David Cashman of the Court of Common Pleas of Allegheny County signed the search warrant at approximately 11:45 a.m. on October 17, 2014. After the warrant was signed, Abraham transferred the phone to another City of Pittsburgh police officer to conduct the search.

Suppression Court Opinion, 9/23/22, at 9–10 (record citations and footnotes omitted).

This first search warrant authorized the police to search for and seize "All electronic data to include but not limited to phone calls, text messages, emails, photos, videos, call log, instant messages and correspond[e]nce from applications downloaded from [Sukhadia's phone]." Application for Search Warrant and Authorization, 10/17/14 (First Warrant), at 1 (identifying the "items to be searched for and seized," being "as specific as possible"). The

warrant confined the location of the search to the following content: "All electronic data to include but not limited to phone calls, text messages, emails, photos, videos, call log, and instant messages from [Sukhadia's phone]." ***Id.*** (describing the "premises . . . to be searched"). It listed two crimes: witness intimidation and selling liquor to a minor, with dates of "10//2014-10/16/2014" [*sic*]. ***Id.***; ***see*** 18 Pa.C.S.A. §§ 4952, 6310.1.

Attached to (and included with) the first search warrant was the affidavit of probable cause. The affidavit provided both detectives' backgrounds as well as the following information in support of probable cause:

> The information in this search warrant was [corroborated] and relayed to us from a report generated by Detective Brian Sellers, who is assigned to the Sex Assault and Family Crimes Unit. The report that he prepared, detailed an incident involving a female victim named [E.W.], and ACTOR Cyrus Sukhadia.

> The report [dictated] that on 10/16/2014, Detective Patterson and Detective Sellers received an underage drinking report from officers Matthew Mays and Michael Muehlbauer of the Point Park University Public Safety Department. The student was identified as 18 year old [E.W.] According to the report, [E.W.] disclosed that she had obtained the alcohol from a City of Pittsburgh Police officer. [E.W.] made a written statement of the incidents. Detective Sellers and Detective Patterson received a copy of the statement.

> [E.W.] knew the officer only as "Cyrus." Through further investigation, it was discovered that a Cyrus Sukhadia was currently enrolled with the City of Pittsburgh Police Training Academy as a recruit. [E.W.] didn't know the address of Sukhadia but was able to direct Sgt. Black (Point Park University) and Lt. Kudrav (A/Commander, Zone 2) to the apartment building in the Brookline section of the City of Pittsburgh. A silver Toyota Corolla, parked on the street in front of the building, was positively identified by [E.W.] as Cyrus' vehicle. A check of the license plate

confirmed the owner as Sukhadia. The driver's license photo was an exact match as to a photo on [E.W.'s] cell phone as Sukhadia.

Detective Sellers and Detective Patterson then interviewed [E.W.] in SAFC room #263. The following is a summary of the interview and is not verbatim unless quoted.

[E.W.] said that she is currently enrolled at Point Park University as a freshman. [E.W.] said that she met Sukhadia on "Tinder". She explained that Tinder is a dating website for mobile phones. [E.W.] admitted that she put her age as 22 on the website and that she "needed booze." On 10/2/2014, at 1842 hrs, Sukhadia responded to [E.W.'s] post with "So i hear u want some booze." The following is conversation between Sukhadia and [E.W.], as copied from [E.W.'s] cell phone:

> [E.W.] - "Yes please."
> Sukhadia - "Lol and whats in it for me :p"
> [E.W.] - "Bring me two bottles, I'll give you head and cash."
> Sukhadia - "Lol sure, what do u want and where am i taking it?"
> [E.W.] - "First, are you okay with getting head in your car?"
> Sukhadia - "Yeah sure" "Actually ur only 3 miles away, we could prob head to my place real quick"

By 1925 hrs., Sukhadia texted [E.W.] and said that he'd be there in 20 minutes. A short time later, Sukhadia called [E.W.] on her phone and told her that he was at the school. Sukhadia drove [E.W.] to a liquor store on Shiloh St. where she gave him $40.00. Sukhadia returned with a bottle of rum and a bottle of vodka. While en route, Sukhadia asked [E.W.] how old she was. [E.W.] told Sukhadia that she was 18 years old. She said Sukhadia replied "No wonder you asked me to get you alcohol." They then drove to Sukhadia's apartment. While [E.W.] performed oral sex on Sukhadia, she noticed a bandage on Sukhadia's knee. After she was done, she asked Sukhadia how he injured himself. Sukhadia told [E.W.] to look in his closet. [E.W.] complied and she said that when she opened the doors, she immediately saw Pittsburgh Police uniforms. [E.W.] said that she felt that she had been "busted." She said Sukhadia said: "Just forget I'm a cop." Sukhadia drove [E.W.] back to the dorms.

[E.W.] said that the next time she and Sukhadia texted each other was on 10/7/2014. Sukhadia agreed to get [E.W.] alcohol. He told her that he had to go to a beer distributor because the

liquor stores were closed. Sukhadia picked up [E.W.] and took her to his house. After the oral sex was completed, Sukhadia drove [E.W.] back to the dorms. During the drive back to the dorms, Sukhadia asked [E.W.] if any of her friends would have oral sex for alcohol or intercourse for drugs. [E.W.] said that she didn't reply. At the dorms, [E.W.] retrieved a 12 pack of [Four Loko] out of the trunk. [E.W.] said she paid Sukhadia $26.00. A short time later, [E.W.] received a message from Sukhadia accusing her of short changing him. [E.W.] said that there was no more communication between the two of them until the final meeting.

On 10/15/2014, Sukhadia picked up [E.W.] and drove to his apartment. [E.W.] said that inside the apartment, she saw a pistol, vest and other police items. [E.W.] said Sukhadia suggested that she put his "billy club" inside her vagina. [E.W.] said she refused. She performed oral sex on Sukhadia. He then drove Sukhadia [*sic*] back to the dorms. While driving [E.W.] back to the dorm, Cyrus Sukhadia told her that if she or some of her friends wanted drugs, he would get the drugs from the evidence locker. Sukhadia said he would get the drugs if [E.W.] or her friends would have sex with him.

As they got closer to the school, Sukhadia and [E.W.] observed a heavy presence of police in the area (due to a movie being filmed in the area). Sukhadia told [E.W.] that if she gets caught, not to tell police she got the alcohol from him. [E.W.] asked Sukhadia why and he said: "I'd plant enough cocaine on you to get you in jail for 20 years." [The police asked E.W.] how she felt about that statement. She said that she was scared and thought, "He could actually do that."

Based on this information, Detective Patterson obtained an arrest warrant for Sukhadia.

On 10/17/14 Sukhadia reported to the Pittsburgh Bureau of Police Training Academy and was placed into custody by Sgt. Epler. [During a search] incident to arrest, Sgt. Epler recovered the white Iphone as described in the application for the search warrant.

Based on the victim's statement's about correspond[e]nce VIA the cellular phone messaging between [E.W.] and Sukhadia, I am respectfully requesting a search warrant for all electronic data to include but not limited to phone calls, text messages, emails, photos, videos, call log, instant messages and

correspond[e]nce from applications downloaded from a cellular phone recovered from Cyrus Sukhadia. The description of the cellular phone is white Apple Iphone [with specific descriptors].

First Warrant, at 2–4.

The suppression court found the following facts about the execution of the first warrant:

Detective Timothy Cole is employed by the Computer Crimes Unit of the City of Pittsburgh Police Department and is tasked with processing and analyzing digital evidence, including conducting forensic examinations of cellular telephones. Cole was assigned to analyze data obtained from [Sukhadia's] phone. Cole was not provided with a copy of the search warrant prior to conducting the search of the phone's contents; but, rather, he was advised by other detectives of the information set forth in the affidavit of probable cause concerning conversations between [Sukhadia] and an underage female regarding [Sukhadia's] provision of alcohol to her in exchange for sexual activity.

The passcode to access the phone was deduced from [Sukhadia's] badge number. Once access to the phone's contents was obtained, Cole extracted all of the phone's electronic data, referred to as a data "dump," and entered it into a program to be decoded into a viewable file which is then searched and analyzed. Cole testified that he was required to review all of the downloaded messages and catalogs in order to locate those communications between [Sukhadia] and E.W. because detectives did not know the name that [Sukhadia] entered into his phone to identify E.W. or the name that E.W. used to identify herself on Tinder.[SCO n.8] As described by Cole, "We just had to look through it and see when we found a conversation relevant to the case." In conducting this search, Cole viewed actual conversations along with phone numbers, profile names, and timestamps.

---

[SCO n.8] Cole explained that he could not just ask E.W. for the name she used to identify her Tinder account because, "Even if they are cooperating witnesses, we don't trust what they are saying is true. We have to look at all of the data." [The suppression court] views this explanation as rather disingenuous in that the probable cause in [the first warrant] was largely based on information provided by E.W.

> who appeared to be represented in the affidavit as a credible
> source.
>
> In his testimony, Cole acknowledged that it is possible to
> limit the search parameters. Cole testified, however, that he
> understood [the first warrant] to allow a general search of the
> entire phone and all of its contents and did not limit his search to
> any specific terms or boundaries, choosing instead to review all of
> the phone's contents without limitation as to dates or names. It
> was while generally reading through [Sukhadia's] chat messages
> that Cole discovered a message between [Sukhadia] and a person
> identifying themself as a fifteen-year-old female. Cole stopped
> his investigation and reported this new information to Detective
> [Aprill-Noelle ]Campbell. Based on this information extracted by
> Cole from [Sukhadia's] phone and Campbell's own search of
> [Sukhadia's] phone using the additional information provided by
> Cole as a search term, Campbell secured a second search warrant.

Suppression Court Opinion, 9/23/22, at 9–12 (footnotes and record citations omitted).

The second warrant authorized police to search Sukhadia's phone and seize "The contents of the Apple iPhone including pictures, videos, chat messages, app content/data, MMS and SMS messages, contacts, call logs, and website history." Application for Search Warrant and Authorization, 10/23/14 (Second Warrant), at 1. The affidavit of probable cause described Detective Campbell's training and experience and then provided specific facts from the investigation:

SPECIFIC PROBABLE CAUSE

> On 10/18/14 I, Detective Campbell, received a phone call
> from Lt. Herrmann of Major Crimes. Lt. Herrmann informed me
> that a Pittsburgh Police Recruit had been arrested for furnishing
> alcohol to a minor and during that investigation the Recruit's
> (Cyrus Sukhadia) cell phone (white Apple iPhone) was seized and
> a search warrant was obtained for [its] contents. When [Detective
> Cole] began to forensically examine the contents of the phone for

evidence pertaining to messages that Sukhadia and the victim sent to each other through a mobile app, he saw a string of messages to a person who went by the user name and screen names of "Bob Marie" and "goatlover98". The messages were sexual in nature, even though she told Sukhadia that she was 15 years old. Det. Cole also saw pictures of Sukhadia exposing himself and of unknown females' naked stomachs and of a group sex act. Lt. Herrmann requested that I follow up with the investigation in regards to Unlawful Contact with Minors.

On 10/19/14 the R/Det. went to the Computer Crimes Unit and accessed the Cellebrite examination results to look for the chats between the suspect and "Bob Marie". The R/Det. found the chat string and confirmed that on 9/2/14 at approximately 2245 hrs. Bob Marie told Sukhadia that she was 15 years old. Sukhadia at first, said she was too young, but then he asked, "I will, r u a virgin haha", then they continued with Sukhadia asking about having sex and when they could meet. When the R/Det. observed these messages[, the affiant] stopped the exam and on 10/20/14 [the affiant] instructed Det. Cole to continue with his examination of the phone but to limit his analysis to potential evidence concerning the original victim and that [the affiant would] be obtaining a new search warrant for evidence of Unlawful Contact with Minors.

CONCLUSION

Based on the above information the Affiant believes there is probable cause showing that PA Title 18 § 6318, has been violated. This Affiant requests authority to search the Apple iPhone forensically for potential evidence.

*Id.* at 2–3.

The suppression court found the following facts about the investigation once police obtained the second warrant:

Cole did not complete his analysis of the information extracted pursuant to [the first warrant]. After securing [the second warrant], Campbell assumed the task of completing the search pursuant to [the first warrant] which had been started by Cole, taking over from the point where Cole had left off. Campbell searched for conversations between [Sukhadia] and E.W. without looking at messages with the newly identified victim which was

the basis for [the second warrant]. Campbell first carried out a search for keywords, but did not find anything. She then extracted text messages from the Tinder database on [Sukhadia's] phone and discovered the messages between [Sukhadia] and E.W.

Suppression Court Opinion, 9/23/22, at 12 (record citations omitted).

Sukhadia was ultimately charged at two docket numbers with different offenses against E.W. and others. On November 30, 2018, Sukhadia moved to suppress all evidence derived from the searches of his phone. Relevant here, he argued that the first warrant was overbroad and that any evidence from the examination under the second warrant was fruit of the poisonous tree. Motion to Suppress Evidence, 11/30/18, at 9–11, 15–16.

**Suppression Ruling**

The suppression court heard Sukhadia's motion on February 28, 2019, and December 3, 2021. The Commonwealth presented the testimony of Detectives Simunovic, Abraham, and Cole. Sukhadia testified on his own behalf and called James Swauger as an expert in digital forensic examination.

The suppression court granted Sukhadia's motion to suppress. As to the first warrant, the court concluded that the attached affidavit established probable cause to search for these specific pieces of digital evidence relating to Sukhadia's interactions with E.W.:

[Sukhadia's] communications using the Tinder application between the dates of October 2, 2014, and October 15, 2014, to gather evidence of his contacts with E.W.[; Sukhadia's] text messages from that same time period to gather evidence of his contacts with E.W.; [Sukhadia's] GPS location data from that same time period to gather evidence of his contacts with E.W.; [Sukhadia's] call history and call logs from that same time period

to gather evidence of his contacts with E.W.; and the phone list of [Sukhadia's] contacts to gather evidence of his contacts with E.W.

Suppression Court Opinion, 9/23/22, at 21. The court found, however, that nothing in the affidavit supplied probable cause to search for photographs and videos. *Id.* at 21 n.13.

The suppression court then compared the items for which there was probable cause with the items that the warrant allowed the police to seize. The court read the warrant to authorize the police to search "all electronic data on [Sukhadia's phone] for the time period of October 2, 2014, through October 16, 2014, for communications and contacts between [Sukhadia] and E.W." *Id.* at 22. The suppression court interpreted the introductory phrase "All electronic data to include but not limited to" to permit the police to search the phone's contents without limits. *Id.*

Therefore, the suppression court concluded that the first warrant lacked particularity and was unconstitutionally overbroad. *Id.* at 23. The suppression court reasoned that the first warrant authorized a "sweeping examination of [Sukhadia's] phone into areas beyond those which were supported by probable cause." *Id.* For example, the court identified other content on Sukhadia's phone that the warrant allowed police to search without having established probable cause:

> In addition to those areas for which a search was supported by probable cause, the warrant authorized a search through [Sukhadia's] internet browsing history and websites visited[;] all web communication applications such as Instagram, Kik, Whisper, instant messaging, and FaceTime accessed and utilized through [Sukhadia's] phone[;] any notes written and recorded on

> [Sukhadia's] phone[;] and a search of all emails which could be accessed through [Sukhadia's] phone.

*Id.*

In further support of its conclusion that the first warrant was overbroad, the suppression court cited the executing officers' testimony that they understood the warrant to allow a "general search of the phone and all of its contents." *Id.*[1] Detective Cole began his search pursuant to the first warrant (which he had not read) without limiting the parameters by dates, names, or keywords. *Id.* The court credited James Swauger's testimony that the software available at the time of the search could filter content by dates, names, and keywords. *Id.* The court thus noted that the police shared its view that the first warrant allowed a "general search." *Id.*

As to the second warrant, the suppression court concluded that it was unconstitutional due to issues from the first search. *Id.* at 25. Initially, the court concluded that the first search was illegal because it was conducted pursuant to an overbroad warrant. *Id.* Alternatively, the court reasoned that Detective Cole had exceeded the limits of the first warrant by searching Sukhadia's messages from outside the time period covered by the warrant (October 2, 2014, through October 16, 2014). *Id.* The suppression court

---

[1] Detective Cole agreed on redirect examination that he thought it was "a general search for specific information related to this investigation." N.T., 2/28/19, at 100. "I was looking for that specific conversation. But you are going through and seeing other conversations that have to do with the same thing and you have to read the conversation and figure out who the conversation is with, what is going on." *Id.*

therefore ruled that the facts supporting the second warrant came from an illegal search. *Id.*

In the alternative, the suppression court reasoned that the second warrant itself was unconstitutionally overbroad. The court found that the affidavit provided probable cause to "support[] a search of photographs, videos and communications on September 2, 2014, between [Sukhadia] and the minor female over an unidentified communication service." *Id.* at 24. By contrast, the suppression court found the warrant to authorize a search for "pictures, videos, chat messages, content and dat[a] derived from applications, MMS and SMS messages, call logs, contacts, and website history found on [Sukhadia's] phone." *Id.* at 24–25. As with the first warrant, the court concluded that the second warrant was overbroad because it authorized the seizure of digital items unsupported by probable cause. *Id.* at 25.

The suppression court thus granted Sukhadia's motion to suppress. The Commonwealth timely appealed, certifying that the suppression order would terminate or substantially handicap its prosecution. The Commonwealth and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925.

The Commonwealth presents one question for our review: "Did the suppression court err in finding the search warrants for [Sukhadia's] cell phone text messages overbroad?" Commonwealth's Brief at 4.

**Analysis**

This Court reviews an appeal of an order granting suppression according to the following standard and scope:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the defendant's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Anderson*, 276 A.3d 282, 292 (Pa. Super. 2022) (*en banc*) (quoting *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021)) (brackets omitted).

All individuals have a constitutional right to be free from unreasonable searches and seizures by the police. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

Additionally, Article I, Section 8 of the Pennsylvania Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I § 8.

Both provisions require search warrants to "specifically list the things to be seized." **Commonwealth v. Grossman**, 555 A.2d 896, 899 (Pa. 1989) (citation omitted). Under Article I, Section 8, that description must be "as particular as reasonably possible." **Id.** "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left [to] the discretion of the officer executing the warrant." **Id.** (quoting **Marron v. United States**, 275 U.S. 192, 196 (1927)).

A search warrant is overbroad if it authorizes police to search for and seize items without establishing probable cause to search for and seize those items. **Commonwealth v. Green**, 265 A.3d 541, 550 (Pa. 2021). Thus, an overbreadth analysis involves first determining "for what items probable cause existed" and then measuring the "sufficiency of the description against those items." **Grossman**, 555 A.2d at 900. Suppression is required if there is an "unreasonable discrepancy" between the items for which there is probable cause and the description of the items the warrant authorizes police to seize. **Id.**; **see Commonwealth v. Johnson**, 240 A.3d 575, 584–85 (Pa. 2020).

- 14 -

Recognizing the "fact-dependent nature of such claims," our Supreme Court has cautioned:

> [S]earch warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice. In that vein, we have held that where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking.

*Green*, 265 A.3d at 550 (quotations and citations omitted).

In Pennsylvania, the same overbreadth standard applies to a search of a digital device as for a physical space. *Id.* at 553–54. We thus recount several cases involving both physical and electronic searches.

In *Grossman*, a search warrant affidavit established probable cause to search for files relating to three clients of an insurance agent, who had over 2000 clients. *Grossman*, 555 A.2d at 900. The warrant, however, authorized the police to seize "All insurance files, payment records, receipt records, copies of insurance applications and policies, [and] canceled checks." *Id.* at 897. Because the warrant allowed police to search for and seize all of the insurance agent's files, rather than just the files for the three clients described in the affidavit, the warrant was overbroad. *Id.* at 900.

By contrast, there was no defect in the warrant in *Commonwealth v. Walston*, 724 A.2d 289 (Pa. 1998). Police were told that a man was growing marijuana in the basement of a house, and they obtained a warrant to search the entire house for marijuana and items related to drug trafficking. *Id.* at

- 15 -

290. Because these items could be found anywhere in the house, the warrant authorizing a search of the entire house was not overbroad. *Id.* at 293.

> [W]here a search warrant adequately describes the place to be searched and the items to be seized[,] the scope of the search extends to the entire area in which the object of the search may be found and properly includes the opening and inspection of containers and other receptacles where the object may be secreted.

*Id.* at 292 (quotation and citation omitted).

A search of a cell phone was at issue in *Green*, 265 A.3d 541. There, the affidavit gave police probable cause to seize evidence that a suspect was sharing child pornography online. *Id.* at 554. The warrant authorized police to search for and seize all computer hardware in the suspect's home, including cellular devices, and it stated: "These items will be seized and then later searched for evidence relating to the production and/or distribution of child pornography." *Id.* at 546 (emphasis removed). Regarding the search of the seized devices, the Supreme Court of Pennsylvania concluded that this limiting language was adequate to prevent the police from generally rummaging for evidence of a crime. *Id.* at 554–55. The high court noted that this overbreadth issue differs from the scope of access to a digital device. *Id.* at 555 n.7.

We similarly found no overbreadth in *Commonwealth v. Moser*, 283 A.3d 850 (Pa. Super. 2022). There, police had probable cause to search for and seize cell phone data relating to an alleged rape. *Id.* at 857–58. After

- 16 -

seizing the suspect's cell phone, they obtained a warrant to search for and seize the following from the contents of the cell phone:

> Any and all calls/messages/conversations/photos/videos that establish or provide details regarding the nature of the relationship between [the suspect] and the [complainant] relating to violations of Title 18: Section 3121 A(1) – Rape by forcible Compulsion and Title 18: Section 6301A(1)(i) – corruption of a minor and other related charges.

*Id.* at 854.  Because of this limiting language, we held that the warrant was not overbroad.  *Id.* at 858.  There was no "unreasonable discrepancy" between the files the police were authorized to seize and the files for which there was probable cause; although the police could search the entire cell phone, they could only seize files related to the relationship between the suspect and the complainant as related to the listed crimes.  *Id.* at 857–58.

By contrast, we held warrants to search two cell phones to be overbroad in *Commonwealth v. Young*, 287 A.3d 907 (Pa. Super. 2022).  There, the affidavits established probable cause to search the cell phones for specific evidence regarding a fraternity party.  *See id.* at 926.  The affidavits concluded with a request to forensically recover that evidence.  *Id.* at 925.  However, the warrants authorized police to search for and seize the cell phones and all the data stored on them, without expressly limiting the search and seizure to evidence from the fraternity party.  *Id.* at 913.  This Court declined to impose the limiting language from the affidavits onto the warrants authorizing the seizure of all the data on each phone.  *Id.* at 927–31.  Because the warrants on their face authorized police to search for and seize every file

- 17 -

on the phones, including files without probable cause, the warrants were overbroad. *Id.* at 931.

Here, with respect to the first warrant, the affidavit established probable cause to search for and seize certain files relating to Sukhadia's interactions with E.W. However, the warrant authorized police to search for and seize "All electronic data" from Sukhadia's phone. We agree with the suppression court—the first warrant would not prevent the police from seizing any file from Sukhadia's phone, regardless of its connection to Sukhadia's interactions with E.W. Unlike in **Green** and **Moser**, there was no language to limit the object of the search to the data for which there was probable cause. Rather, as in **Grossman** and **Young**, the first warrant authorized the police to search for and seize a vast amount of data unrelated to the crimes for which there was probable cause. Therefore, the warrant was overbroad.

The Commonwealth alleges several analytical errors by the suppression court, which we address in turn. Primarily, it asserts that, given the nature of digital information on a cell phone, it was reasonable to search Sukhadia's entire phone for evidence of his interactions with E.W. **Cf. Walston**, *supra* (allowing a search of an entire house for drug items). This misses the mark. The first warrant was overbroad because of what the police could search for, not where they could search for it. **See Green**, 265 A.3d at 555 n.7. Because the warrant authorized the seizure of all the files in Sukhadia's phone, it is of no moment where on Sukhadia's phone they could search for those files.

The Commonwealth also argues that the suppression court should have considered the language in the affidavit as limiting the files that the police could search for and seize. It offers multiple reasons why this Court in **Young** erred by refusing to consider an affidavit in defining the items to be searched for and seized. We need not opine whether **Young** was correct[2] because the affidavit attached to the first search warrant in this case did not limit the requested content to those files for which there was probable cause:

> Based on the victim's statement's about correspond[e]nce VIA the cellular phone messaging between [E.W.] and Sukhadia, I am respectfully requesting a search warrant for **all electronic data** to include but not limited to phone calls, text messages, emails, photos, videos, call log, instant messages and correspond[e]nce from applications downloaded from a cellular phone recovered from Cyrus Sukhadia. The description of the cellular phone is white Apple Iphone [with specific descriptors].

First Warrant, at 4 (emphasis added).[3] Like the face of the warrant, the affidavit of probable cause anticipates a search to seize **all** electronic data on Sukhadia's phone. Therefore, even if a reviewing court considered the affidavit, it would not cure the unreasonable discrepancy between the object of the search and the files for which there was probable cause.

Relatedly, the Commonwealth criticizes the suppression court's use of Detective Cole's testimony that he conducted a general search of Sukhadia's

---

[2] Furthermore, a three-judge panel of this Court cannot overrule an opinion from another three-judge panel of this Court. **Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013).

[3] By contrast, the affidavit in **Young** differed significantly from the description of the items to be searched for and seized. **See Young**, 287 A.3d at 925.

phone. Because review of a search warrant is limited to the four corners of the document, the Commonwealth suggests that Detective Cole's description of his search was not relevant. We observe that Detective Cole did not read the search warrant and that he believed he was searching only for evidence of Sukhadia's interactions with E.W. Regardless, Detective Cole's testimony was not essential to the suppression court's conclusion or ours. Based on the language of the first search warrant, the police were authorized to search for and seize all electronic data from Sukhadia's phone, rather than just the data for which probable cause existed. Therefore, the Commonwealth's challenges fail, and the first warrant was overbroad.

With respect to the second warrant, the suppression court provided three independent grounds for suppression: (1) the second warrant was the fruit of an unconstitutionally overbroad first warrant, (2) the second warrant stemmed from a search that exceeded the scope of the first warrant, and (3) the second warrant itself was overbroad. The Commonwealth limits its argument against the "fruit of the poisonous tree" doctrine to contending that the first warrant was not overbroad. Because the first warrant was overbroad, the Commonwealth's argument fails. As this is a sufficient basis to sustain the suppression court's ruling, we do not reach the Commonwealth's challenges to the alternative grounds for suppression of the second warrant.

**Conclusion**

Police had probable cause to search for certain communications between Sukhadia and E.W. among the contents of Sukhadia's cell phone. They obtained a warrant that, based on its plain language, authorized them to search the entire phone and seize everything on it, with no limiting language. The suppression court properly concluded that this warrant was overbroad.

The second search warrant resulted from a search conducted to the first warrant. Because the first warrant was overbroad, the suppression court properly granted suppression with respect to the second warrant. Therefore, we will affirm the order granting Sukhadia's motion to suppress evidence obtained from both searches of his cell phone.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/8/2023