J-S37023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ABNER J. LUGO-FRANCO :
:
Appellant : No. 424 EDA 2025

Appeal from the Judgment of Sentence Entered January 3, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0000730-2024

BEFORE: DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED JANUARY 15, 2026**

Abner J. Lugo-Franco appeals from the judgment of sentence entered after he was convicted of possession of cocaine with intent to deliver and related crimes. He challenges the denial of his motion to suppress evidence, specifically claiming that search warrants for two cell phones did not establish probable cause to seize certain categories of data and were overbroad. We affirm.

The issues in this appeal stem from two substantively identical search warrants for data on two cell phones that police seized from Lugo-Franco when they arrested him on October 12, 2021. The warrants, in identifying the "items to be searched for and seized," included the following attached exhibit, listing eight categories, all limited to evidence of enumerated crimes:

_____

[*] Former Justice specially assigned to the Superior Court.

EXHIBIT "A"

PROPERTY TO BE SEARCHED FOR AND SEIZED:

Evidence relating to violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act; 18 Pa.[C.S. §] 7512 (Criminal Use of Communication Facility), and Criminal Conspiracy, 18 Pa.C.S. §903, including the following:

1.      The cellular telephone numbers and/or direct connect and/or names and identities, including electronic mail addresses, usernames and passwords assigned to the device.  This includes the IMEI/IMSI, MEID and/or ESN numbers for the device.

2.      Digital, cellular, and/or telephone numbers and/or direct connect numbers, names and identities, including electronic mail addresses, usernames and passwords stored in the device and in any other electronic media attached to or found with the device, including but not limited to SIM cards and flash memory cards.

3.      Text messages, telephone call history, contact lists, and any electronic mail messages and any other documents or information stored in the device's memory relating to Criminal Conspiracy, 18 Pa.C.S. §903, Tampering with or Fabricating Physical Evidence, 18 Pa.C.S. § 4910, and Obstruction of Administration of Law, 18 Pa.C.S. § 5101.

4.      All videos and image files, on whatever medium (e.g. digital media, optical media), including but not limited to SIM cards and flash memory cards, also including those in opened or unopened e-mails or text messages, chat logs, and Internet history.

5.      All communications, including but not limited to within texting applications and social media platforms.

6.      All installed applications and files within said applications. The search/analysis of these files may be conducted manually or with a forensic examination tool.  Photographs/screenshots of these files may be taken to memorialize said files.

7.      All computer passwords, keywords and other data security devices designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software, or other programming code.  Any password or encryption key that may control access to a computer operating system, individual computer files, or other electronic data.

8.      Evidence and contents of logs and files on the device, such as those generated by the device's operating system, which describes the history and use of the device, including but not limited to files indicating when files were written, were opened, were saved, or were deleted.  Evidence tending to show the identity of the person using the device at the time any of the items listed in paragraphs 3-6 were created, sent, received, or viewed.  Also, any malware resident on the device.

Hearing Exhibit CS-5, Warrant, attachment.

The warrants included identical 15-page affidavits of probable cause, in which the affiant described a joint investigation between law enforcement agencies "targeting a drug trafficking organization who are alleged to be sending controlled substances via mail parcels." *Id.* at 3.  The affidavit stated that in April, the "main target" named in the investigation was observed receiving a parcel delivered from Puerto Rico to an address in Bucks County. *Id.*  The affidavit then gave five law enforcement officers' narratives about an incident on October 12, 2021, when Lugo-Franco arrived at the same address.

The narratives described that police were dispatched to the address because a real estate agent reported that USPS delivered a suspicious package there and that a man (Lugo-Franco) arrived soon afterwards.  The real estate agent said that the previous tenants vacated the property; because the name on the package was not the name of a previous tenant, the real estate agent opened the package and found a vacuum-sealed bag in a box of fruit snacks.

Outside the property, Lugo-Franco told police that "Luz" asked him to pick up the package.  He called Luz and handed the phone to the officers; however, Luz ended the call.  Lugo-Franco asked if he was being detained,

- 3 -

and a detective told him he was free to go.  Police noticed that Lugo-Franco had two cell phones.

The real estate agent contacted the out-of-state owner of the property, who consented to the law enforcement presence and to a canine sniff of Lugo-Franco's car.  The sniff indicated a positive scent for narcotics.  The property owner provided text messages from the prior tenant, whom police believed to be Luz.  On the day of the incident at 4:00 p.m., the tenant texted the property owner:

> Hi.  There is a package at the door which I sent my brother to retrieve.  I think there's ppl at the house.  I'm just telling you because I don't want them to think they are stealing the package.  They won't open the door.  I think they took the package inside.  Please answer the phone my brother is detained.  They think he was trying to steal the package.

*Id.* at 11.

At 5:00 p.m., authorities told Lugo-Franco he was under arrest.  A detective took Lugo-Franco's two cell phones and placed them on the roof of Lugo-Franco's car.  Within minutes, one of the phones vibrated from an incoming call.  The phone's screen showed the first name of the "main target" of the joint investigation, the person who had received the parcel in April.

The affidavit concluded with several paragraphs of general information about why the affiant expected Lugo-Franco's cell phones would contain evidence of drug crimes:

> Your Affiant believes that probable cause exists to believe that the cellular phones seized from Abner J. LUGO-FRANCO was being used to communicate with [the "main target" of the joint

investigation] to coordinate, direct, and to track the parcel(s) containing the suspected controlled substances.

Based on Your Affiant's training and experience, Your Affiant knows that cellular phones can save and store call logs, SMS/ Text Messages and their respective logs, and other messaging data which may reveal evidence pertinent to criminal investigations. Additionally, evidence of criminal activity, and information indicative of ownership and usage of the cellular device, is often stored on the cellular device such as account information, contact information and photographs.

Your Affiant, through his training and experience, has knowledge of cellular phones, cellular networks and experience in analyzing cellular phones and various reports generated by cellular network providers. Your affiant is aware that cellular telephones and providers acquire and retain various forms of location-based data for internal network optimization and engineering purposes, as a normal course of business. This data may be stored on the actual phone device and sent to cellular providers from mobile devices for which they provide cellular service.

For some cellular devices, the data retained in these historical records contains location information; such as GPS location data from a mobile device. These records may be generated during a voice, SMS/MMS or data transaction, or the record may be generated based on network factors that do not require the mobile device to be engaged in an active transaction. The location-based data may be sent from the mobile device to the network or may be stored on the device while certain applications and operations are running in the background of the phone. Historical records containing this location-based data can be used to determine the whereabouts of the respective device at specific times.

The data and information referenced above, can be extracted from the cellular device by performing data extraction procedures. These data extraction procedures enable investigators to obtain an exact copy of the cellular device's data contents and allow the investigator to analyze the device's contents without risk of losing data that may be of evidentiary value.

WHEREFORE, Your Affiant submits that there is probable cause to believe that the cellular phones seized from Abner J.

LUGO-FRANCO, will contain data relevant to this ongoing investigation into violation(s) of the Controlled Substance, Drug, Device and Cosmetic Act and related criminal offenses.

*Id.* at 14.

Notably, the separate narratives in the affidavit differ slightly. One officer provided the wrong date for the incident. *Id.* at 4. Although one officer stated that Luz provided some information (that Lugo-Franco was her brother, who was there to pick up a package, and it did not matter what was in it, just give it to him so he can leave), yet another stated that Luz hung up before police could speak with her. *Id.* at 4, 7.

The suppression court heard Lugo-Franco's motion on November 14 and 22, 2024. On December 6, 2024, the court denied suppression. Lugo-Franco proceeded to a stipulated non-jury trial on January 3, 2025. The court found him guilty and imposed a mandatory minimum sentence of 5 to 10 years of incarceration the same day. Lugo-Franco timely appealed. Lugo-Franco and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

In this appeal, Lugo-Franco presents the following issue for review:

Whether the suppression court erred when it held there was sufficient probable cause to justify a search of cell phones possessed by [Lugo-Franco] and determined that the search was not overbroad?

Lugo-Franco's Brief at 2.

Lugo-Franco argues that the affidavit from the warrants failed to establish that a drug trafficking organization existed or that evidence of the group's crimes would be found on the phones, specifically the messaging applications, e-mails, photographs, and location data. He states that although

police observed him for 90 minutes, the warrants included no temporal limitation and made no distinction between the two phones. Lugo-Franco contends that the search warrants were overbroad, as the "items to be searched for and seized" spanned whole categories of information without a factual basis and without any limitation as to time.

The following principles frame this Court's review over the denial of a suppression motion:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa. Super. 2020) (quoting *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017)).

An issuing authority must determine whether an application for a search warrant establishes probable cause; this task "is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v.*

*Gagliardi*, 128 A.3d 790, 794 (Pa. Super. 2015) (quoting *Commonwealth v. Gray*, 503 A.2d 921, 925 (Pa. 1986)).

Once the search warrant has been issued and the ensuing search is challenged, a reviewing court applies a different standard than the issuing authority's probable cause determination. That court must determine whether "there is substantial evidence in the record supporting the decision to issue a warrant." *Id.* (quoting *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010)). "In doing so, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." *Id.* Under this standard, a typographical error in a search warrant affidavit will not negate probable cause established by the rest of the affidavit. *Commonwealth v. Leed*, 186 A.3d 405, 415–16 (Pa. 2018).

A search warrant is overbroad if there is an "unreasonable discrepancy" between the items for which probable cause exists and the items the warrant authorizes police to search for and seize. *Commonwealth v. Green*, 265 A.3d 541, 550 (Pa. 2021) (ultimately quoting *Commonwealth v. Grossman*, 555 A.2d 896, 900 (Pa. 1989)). A court addressing an overbreadth challenge first determines the items for which probable cause existed and then assesses whether "the description was not as specific as reasonably possible." *Id.* This is a fact-dependent inquiry based on a common-sense reading. The Supreme Court of Pennsylvania has explained:

"search warrants should 'be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007), quoting Pa.R.Crim.P. 205, Cmt. In that vein, we have held that "where the items to be seized are as precisely identified as the nature of the activity permits and an exact description is virtually impossible, the searching officer is only required to describe the general class of the item he is seeking." *Commonwealth v. Matthews*, 285 A.2d 510, 514 (Pa. 1971) . . . .

*Id.* (citations altered).

Importantly, the same legal standard applies to a search of a digital device like a cell phone. *Id.* at 553. Thus, where a warrant described a series of home invasions but did not provide that the subject took photographs or sent text messages about the crimes, this Court held that there was no substantial basis to conclude that the phone would contain those items. *Commonwealth v. Ani*, 293 A.3d 704, 728–29 (Pa. Super. 2023). However, because the affidavit in *Ani* stated that the subject possessed his phone and used the phone's flashlight during the invasions, we held there was a substantial basis to find probable cause for the phone's locational data and flashlight use. *Id.* at 729–30. Under the doctrine of severance, a court may strike the invalid portions of a warrant and keep the portions that "describe with particularity the evidence to be seized." *Id.* at 729 (quoting *Commonwealth v. Bagley*, 596 A.2d 811, 924 (Pa. Super. 1991)).

A warrant that contains "self-limiting language," which limits the objects of a digital search based on probable cause, will survive an overbreadth challenge. *Commonwealth v. Moser*, 283 A.3d 850, 857 (Pa. Super. 2022)

(citing **Green**, 265 A.3d at 554–55, and **Commonwealth v. Orie**, 88 A.3d 983, 1008 (Pa. Super. 2014)). In **Moser**, a warrant to search the entirety of the data in a suspect's cell phone allowed police to seize only those files "that establish or provide details regarding" the crimes alleged; this self-limiting requirement prevented an unconstitutional search, and the warrant was not overbroad. **Id.** at 858; **accord Green**, 265 A.3d at 554 (concluding that a warrant that allowed "a search only for 'evidence relating to the possession and/or distribution of child pornography'" was not overbroad).

Here, the search warrants established a substantial basis for the issuing authority to find probable cause, and the self-limiting language is adequate to defeat Lugo-Franco's overbreadth challenge. The description of the drug trafficking organization, including the deliveries observed in April and October, is sufficient to show that the organization existed. The warrant's conclusion that the "main target" of the investigation was part of the conspiracy is supported both by that person's receipt of the parcel in April and the call to Lugo-Franco's phone after police put it on top of Lugo-Franco's car, which showed the person's first name on the phone's screen.

As to the categories of information that the warrant allowed police to search for and seize, we agree with Lugo-Franco that there was no substantial basis for the issuing authority to find probable cause to search for emails. The extensive factual narratives in the affidavit do not indicate that Lugo-Franco used emails to facilitate his receipt of drugs, and the affiant's conclusion does not mention how drug traffickers use email.

However, the remaining categories do provide a substantial basis for the issuing authority to find probable cause. The affidavit relates how Lugo-Franco repeatedly made phone calls while he was trying to receive the parcel, and the affiant's conclusion states that Lugo-Franco was using his phones to coordinate, track, and direct the parcels. The text messages from Luz to the property owner show that Lugo-Franco was communicating with Luz while at the address. Furthermore, to the extent the warrant allowed police to seize location data, the affidavit does establish that Lugo-Franco possessed his phones while waiting for the parcel.[1]

As to the temporal limitation, we reject Lugo-Franco's argument that the phones could only be searched for evidence created during the 90 minutes police observed him. During his time on the scene, Lugo-Franco was involved in numerous phone calls, after which Luz sent a text message to the property owner and the main target of the investigation called one of Lugo-Franco's phones. It is reasonable to infer from Luz's text message to the property owner and from the main target's call to Lugo-Franco's phone that Lugo-Franco had been participating in the conspiracy from before the time he arrived at the address. The issuing authority, therefore, had a substantial basis to conclude that evidence of the crimes would exist from outside the 90-minute window Lugo-Franco now urges.

---

[1] None of the eight categories of data authorized to be searched for and seized appears to include GPS or location information.

As to Lugo-Franco's three-sentence argument that the warrants did not distinguish between the two phones, we are unpersuaded that this renders either warrant invalid. Both phones are described as black in color, and police observed Lugo-Franco make multiple phone calls. Thus, it appears that the warrants described the phones as nearly as possible based on the information available.

As to Lugo-Franco's overbreadth challenge, both warrants allowed the police to seize only evidence related to the listed crimes. Based on this self-limiting language, the warrants are not overbroad. *Moser*, 283 A.3d at 858.

Because the warrants offered no substantial basis for the issuing authority to find probable cause for the search and seizure of Lugo-Franco's emails, we sever that portion of the objects of the warrants. *Ani*, 293 A.3d at 729. From the exhibits entered at the suppression hearing, it does not appear that any emails were seized or used in Lugo-Franco's trial. *See* Exhibit CS-6; N.T., 11/22/24, at 67–72 (describing the extraction). With no unconstitutionally seized evidence to suppress, we therefore affirm Lugo-Franco's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026