J-S31020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER FIELDS | : | |
| | : | |
| Appellant | : | No. 2155 EDA 2023 |

Appeal from the PCRA Order Entered August 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009361-2014

BEFORE: BOWES, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED DECEMBER 2, 2024**

Christopher Fields appeals from the order dismissing his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Fields raises several claims of ineffectiveness of counsel. We affirm.

A panel of this Court previously set forth the facts as follows:

> [Around] 11:15 [p.m.] on June 7, 2014, [Victim] and his [girlfriend], Shirley Ebron, were driving northbound on the Roosevelt Boulevard in Philadelphia, when he came to a stop at the traffic light at Fifth Street. [Fields] along with fifteen to twenty other motorcyclists were heading in the same direction. A group of the bikers pulled in front of [Victim's] car[,] cutting him off as the others pulled up behind and beside him, irate that [Victim] had not previously allowed all of the bikers to pull in front of his car. Having his car surrounded by the motorcyclists, [Victim] opened the door and took a step out of his vehicle at which time, [Fields] drew his pistol and shot [Victim] five times, killing him.
>
> Police Captain Nick Brown was off-duty and stopped perpendicular to the [B]oulevard when he first observed the bikers. After hearing the gunshots, [Captain] Brown saw Ms.

Ebron get out of the passenger side of the car and come to the [aid] of [Victim]. The captain got out of his car and approached the crime scene. [Captain] Brown saw [Fields], straddling his white motorcycle pointing a gun at Ms. Ebron, who was on the ground. At the same time, Officers Troy Ragsdale and Dawn Jones who were in an unmarked police car happened to be approaching the scene. The uniformed officers got out of their vehicle with guns drawn, prompting the bikers to flee. Officer Ragsdale approached the scene, yelling at [Fields] to stop, and observed [Fields] stuff an object into his vest. [Fields'] motorcycle wouldn't start, so he ditched the bike, running northbound on 5th Street to the other side of the [B]oulevard. The police lost sight of [Fields] in the brush, and [Fields] made it across the [B]oulevard.

Tiffany Scott lived on the [B]oulevard. After hearing the shots, while standing on her upstairs balcony, she saw a man standing at her door. Ms. Scott yelled at him and he took off on foot, eventually running back across the [B]oulevard, where he was struck by a car. Not seriously injured, [Fields] again took off into the brush. The police scoured the area, using a helicopter to light up the area and found [Fields]. Officer Ragsdale identified [Fields,] and he was arrested. Additionally, the police found [Fields'] goggles on Ms. Scott's walkway, and across from her steps, a .40 caliber Smith & Wesson handgun with a laser sight. Next to the pistol was a trashcan containing [Fields'] helmet and black motorcycle vest. The vest is a "Wheels of Soul" vest with patches of "One Percent" and "Enforcer." Gunshot residue was detected on [Fields'] clothing and ballistics [tests] showed that the .40 caliber [handgun], found where [Fields] had been hiding, matched the fired cartridge casings on the street as well as in [Victim's] car door and front seat.

*Commonwealth v. Fields*, No. 2981 EDA 2017, 2018 WL 6582776, at *1 (Pa.Super. filed Dec. 14, 2018) (citation omitted).

A jury convicted Fields of third-degree murder, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and

possessing instruments of crime.[1] The court sentenced Fields to an aggregate term of 28½ to 57 years' imprisonment. Fields filed post-sentence motions, which were denied. Fields appealed and we affirmed his judgment of sentence. *See id.* In May 2019, the Supreme Court of Pennsylvania denied Fields' petition for allowance of appeal.

In January 2020, Fields filed a *pro se* PCRA petition. Counsel was appointed and subsequently filed a no-merit letter. The court issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. New counsel entered her appearance on behalf of Fields and filed a response to the court's Rule 907 notice. In May 2022, Fields filed a counseled amended PCRA petition. The court again issued a Rule 907 notice, and Fields filed a response to the notice. On August 15, 2023, the court dismissed Fields' PCRA petition. This appeal followed.

Fields raises the following issues:

1. Whether the PCRA court erred, when it dismissed Appellant Christopher Fields' petition for post conviction relief, as trial counsel was ineffective for failing to file a motion to suppress data recovered by Mr. Fields' cell phone?

2. Whether the PCRA court erred, when it dismissed Appellant Christopher Fields' petition for post conviction relief, as trial counsel was ineffective in his cross-examination of Philadelphia Police Department Criminalistics Laboratory forensic scientist Lynn Haimowitz?

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, and 907(a), respectively.

3. Whether the PCRA court erred, when it dismissed Appellant Christopher Fields' petition for post conviction relief, as trial counsel was ineffective for failing to raise a substantial question as to Appellant Christopher Fields' sentence in his post-sentence motion, resulting in waiver of this claim on direct appeal?

4. Whether the PCRA court erred, when it dismissed Appellant Christopher Fields' petition for post conviction relief, as appellate counsel was ineffective for failing to argue on direct appeal, that the trial court erred in denying Appellant Christopher Fields' peremptory challenge to juror number 3 during voir dire?

Fields' Br. at 4-5.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Fields raises claims of counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs

- 4 -

bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

Fields first argues that trial counsel was ineffective for failing to file a motion to suppress the data recovered from Fields' cell phone. Fields' Br. at 14. He maintains that shortly after he was arrested, the police confiscated his cell phone. ***Id.*** at 23. Ten days later, the police applied for and were granted a search warrant for the phone. ***Id.*** at 24. Incriminating photographs, including photographs of a gray hooded sweatshirt, a Wheels of Soul motorcycle vest, and a motorcycle and a helmet identical to those recovered at the crime scene, were recovered from the phone and presented at trial. ***Id.*** at 29. Fields argues that trial counsel was ineffective for failing to move to suppress the data recovered from his phone because the search warrant was unconstitutionally overbroad and lacked probable cause. ***Id.*** at 25-26. In Fields' view, "[t]he search warrant permitted an essentially unlimited search of the device." ***Id.*** at 27. He points out that "[t]here is no indication that a cell phone was utilized in the commission of the crime" or that "a full-blown search of Fields' cell phone would yield specific evidence of the shooting such as the identity of co-conspirators." ***Id.*** at 28.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. Except where an exception applies, "a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause."

*Commonwealth v. Lyons*, 79 A.3d 1053, 1063-64 (Pa. 2013). "[T]he totality of the circumstances set forth in the affidavit [of probable cause] must be considered when examining whether probable cause supports the issuance of the search warrant." *Commonwealth v. Harlan*, 208 A.3d 497, 505 (Pa.Super. 2019) (quotation marks omitted). "[P]robable cause is based on a finding of the probability, not a *prima facie* showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." *Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa.Super. 2013) (citation and brackets omitted; italics added). We limit our review to the four corners of the affidavit. *Id.*

"[A] warrant must name or describe with particularity the property to be seized and the person or place to be searched." *Commonwealth v. Orie*, 88 A.3d 983, 1002 (Pa.Super. 2014) (citation omitted). A warrant is not sufficiently particular if it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize." *Commonwealth v. Green*, 204 A.3d 469, 480 (Pa.Super. 2019) (citation omitted). A warrant must also not be overbroad. *Commonwealth v. Ani*, 293 A.3d 704, 716 (Pa.Super. 2023). A warrant is overbroad if it "allows authorities to seize items for which probable cause does not exist[.]" *Id.* "The overbreadth doctrine applies equally to a search of digital space [such as a cell phone] as it does for a physical search." *Commonwealth v. Moser*, 283 A.3d 850, 857 (Pa.Super. 2022) (citation and internal quotation marks omitted). An overbreadth

challenge, however, "fails if a warrant for a search of an entire digital device has 'self-limiting language' that allows police to search only for evidence of the crime for which there is probable cause." ***Id.***

Here, the search warrant listed the item to be searched as a "Motorola Android cellular phone." Search Warrant 182917 and Affidavit, 6/17/14. The search warrant authorized search and seizure of "[a]ny and all cell phone numbers, downloads to phone any/all contents and data[, e.g.,] photos, photo and video galleries and logs. Call logs, text messages, downloads and any data of evidentiary value stored in suspect[']s Motorola [A]ndroid cell." ***Id.***

The affidavit of probable cause for the search warrant stated:

> On Saturday June 7, 2014 at approximately 11:11 pm 25th District Units (P/O Ragsdale # 6793 and P/O Jones # 9171) were in the area of 5th and Wyoming and observed a group of motorcycles surrounding a vehicle at 5th and Roosevelt Boulevard. The officers started driving N/B on 5th Street when they heard several gunshots and observed several of the motorcycles fleeing E/B on Roosevelt Boulevard. The officers pulled up to 5th and Roosevelt Boulevard, there were (2) shooting victims lying outside of a tan 2003 Buick Century. There was a B/M sitting on a white Harley Davidson motorcycle (Pa Tag: G2531) which was positioned next to the tan Buick. The male's motorcycle appeared to stall on him. The male then dropped the motorcycle and fled N/B on 5th Street across the Boulevard. P/O Ragsdale pursued the male on foot and provided flash information on the male while doing so. P/O Ragsdale lost sight of the male around the area of the overpass at 5th and Roosevelt Boulevard. The male, later identified as Christopher Fields (B/M 34yrs) was subsequently arrested in the wooded area of 500 W Roosevelt Boulevard by other responding units. P/O Ragsdale confirmed Christopher Fields was the male who fled from the white Harley Davidson motorcycle the same male he was pursuing on foot.

There were (6) .40 caliber FCC's recovered next to the D/S door of the tan Buick. Both shooting victims Todd Riley (B/M 43yrs) and "Witness" were transported to Temple Hospital by Police. Todd Riley was pronounced at 12:35 am by Dr. Wagner. SE was treated and released from the Hospital.

Pursuant to the arrest of Christopher Fields a black Motorola Android phone was recovered. Fields did claim ownership of this phone. The phone number to this phone is unknown and was unable to be established through contact with Christopher Fields.

Your affiant respectfully requests a Search and Seizure Warrant to forensically examine the mainframe of the suspect[']s Motorola Android cellular telephone which he[] stated ownership of and possessed upon arrival at the Homicide Unit. Affiant requests a forensic search of this phone to retrieve the following phone contents. Cell phone number, all downloads to phone any/all contents and data, e.g. photos, photo and video galleries and logs, call logs, text messages, downloads and any data of evidentiary value in the investigation of the decedent's murder by shooting that occurred on June 7, 2014.

*Id.* (emphasis removed).

The PCRA court found that sufficient probable cause existed. It stated:

Clearly the issuing authority had a substantial basis to conclude that probable cause existed. There were several members of a motorcycle group that surrounded the decedent's car and were participating in the events leading up to the crime. The other members of the group, except [Fields], had fled the scene. Multiple gunshots had been heard and there were two gunshot victims lying outside of the vehicle. It was unclear how many shooters had been involved. Accordingly, trial counsel cannot be faulted for failing to file a motion to suppress.

PCRA Court Opinion, filed 1/9/24, at 8.

The PCRA court did not err in finding that trial counsel was not ineffective for failing to file a motion to suppress the data recovered from Fields' phone. Based on the totality of the circumstances, probable cause existed that Fields' phone would contain evidence relating to the crime. When the officers approached the scene after hearing gunshots, Fields was sitting on his motorcycle while the other motorcyclists fled. Fields attempted to start his motorcycle, but it stalled so he fled on foot. When the officers eventually arrested him, he was in possession of the subject phone and admitted it was his. There was reason to believe that a search of the phone would likely yield relevant evidence, including the identities of the other motorcyclists allegedly involved in the crime, a possible link between Fields and the weapons used in the crime, and whether Fields had a prior relationship with the victims.

Further, the warrant was not overbroad. The search warrant specifically identified that the search was being requested for Fields' Motorola Android cellular phone. It listed the specific types of evidence the officers could look for, including call logs, text messages, and photos. It limited the search to "any data of evidentiary value." It also listed the crimes under investigation. The warrant also specifically referred to the affidavit of probable cause, which identified the phone to be searched and the types of evidence that was sought. Moreover, the affidavit specifically limited the search to information "of evidentiary value in the investigation of the decedent's murder by shooting that occurred on June 7, 2014." Thus, the affidavit of probable cause contained sufficient limiting language to prevent rummaging and to permit the police to

search only for evidence of the crime for which there was probable cause. **See Moser**, 283 A.3d at 857. Because there was probable cause for the search of Fields' phone and the warrant was not overbroad, Fields' ineffectiveness claim against counsel for failing to file a motion to suppress lacks arguable merit. As such, this claim fails. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1210 (Pa. 2006) (stating "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim").

Fields next argues that trial counsel was ineffective in his cross-examination of Philadelphia Police Department Criminalistics Laboratory forensic scientist Lynn Haimowitz. The Commonwealth called Haimowitz as an expert in the field of DNA analysis. Haimowitz analyzed multiple samples of evidence for DNA, including swabs taken from the motorcycle, the handgun, the chin straps of the motorcycle helmet, the nosepiece, the safety glasses, the collar of the motorcycle vest, and the hooded sweatshirt found in the trash near the scene of the crime. **See** N.T. Trial, 10/17/16, at 12-24. The only tested item for which there was a potential DNA link to Fields was the sweatshirt. As to the DNA on the sweatshirt, Haimowitz testified:

> This sample is consistent, again, with a mixture of partial DNA profiles, this time coming from at least three individuals. At least one of those individuals is male. I was able to do a comparison between Christopher Fields and this sample . . .
>
> Under the scenario that this DNA mixture originates from Christopher Fields and two random unrelated individuals, it is 207.3 times more likely to occur than if it originates from three random unrelated individuals in the African American population, 95.51 times more likely to occur than if it

originates from three random unrelated individuals in the Caucasian population, and 91.19 times more likely to occur than if it originates from three random unrelated individuals in the Hispanic population.

So what this statistic is saying, there are consistencies between the profile of Christopher Fields and this mixture. However, because of the nature of the mixture, I can't say for certain whether he's in it or not. What I can say is if you take the scenario that this is a mixture of Christopher Fields and two individuals, that is more likely to be the case than if it was just three random individuals picked at random, how much more likely to the numbers that I've stated.

*Id.* at 20-21.

Fields argues that trial counsel's cross-examination of Haimowitz was scant. Fields' Br. at 32. He maintains that counsel failed to cross-examine Haimowitz on substantive issues with the DNA report and instead improperly limited his cross-examination to swabbing, property receipts, and dates of analysis. *Id.* at 14. According to Fields, counsel "failed to develop testimony from Ms. Haimowitz regarding the incredibly low statistics for the results from the swab of the grey sweatshirt or that a female was wearing the safety glasses such that the jury could have fairly evaluated the DNA evidence." *Id.* at 32-33.

In support of his argument, Fields attached to his PCRA petition a letter from Katherine Cross, a DNA Technical Leader and Forensics Biologist at Guardian Forensic Sciences. *See* Supplemental Amended PCRA Petition, filed 5/31/22, at Ex. E. Cross reviewed the DNA laboratory report, case file, and trial testimony and opined that trial counsel's cross-examination was deficient because it was very brief and focused mainly on property receipts and dates

of analysis rather than the report. *Id.* Cross suggested that there were several substantive issues that could have been addressed with the assistance of a DNA expert, including the fact that the sweatshirt had a mixed DNA profile of at least three people, there was a possibility of contamination since the sweatshirt was found in a trash can, and there was a possibility that the DNA was not from Fields but was just coincidentally included in the mixture. *Id.* Cross also stated that counsel should have asked questions regarding the meaning of the statistics and the low values that were calculated and should have emphasized that the presence of DNA does not equal guilt of a crime. *Id.*

"Matters concerning the examination and cross-examination of witnesses are matters clearly within the province of trial counsel." *Commonwealth v. Smith*, 17 A.3d 873, 912 (Pa. 2011); *see also Commonwealth v. Smolko*, 666 A.2d 672, 680 (Pa.Super. 1995) ("[T]rial decisions, especially those pertaining to the nature and extent of cross-examination, are matters of style and tactics involving subtle stratagems which ordinarily are within the exclusive province of the trial counsel") (citation omitted).

Here, the PCRA court rejected Fields' claim that further cross-examination of Haimowitz would have changed the outcome of the trial. *See* PCRA Ct. Op. at 9. It pointed out that the only DNA testimony of any value was the testimony about the sweatshirt and that evidentiary value was negligible. *Id.* The court concluded that Fields failed to show how further

cross-examination would have advanced his case or that he was prejudiced. *Id.*

The PCRA court did not err. Fields failed to establish how a more thorough cross-examination of Haimowitz would have impacted the outcome of the case. Haimowitz testified that she could not "say for certain" whether the DNA found on the sweatshirt was Fields' DNA. N.T. Trial, 10/17/16, at 21. Therefore, Haimowitz's own testimony established that the DNA found on the sweatshirt did not necessarily come from Fields. Further, Haimowitz's testimony that the DNA found on the sweatshirt could possibly be linked to Fields was cumulative of the other, above-referenced evidence connecting him to the crime. We are not persuaded that if counsel had chosen further cross-examination of Haimowitz, there is a reasonable probability the outcome of the trial would have been different. Fields has therefore failed to show prejudice and is not entitled to relief on this claim.

In his third issue, Fields argues trial counsel was ineffective for failing to raise a substantial question as to his sentence in his post-sentence motion, resulting in waiver of that claim on direct appeal. Fields' Br. at 34. He maintains that trial counsel had no reasonable basis for his failure to expressly argue in the post-sentence motion that the trial court failed to consider the sentencing factors under 42 Pa.C.S.A. § 9721(b) on the record. *Id.* at 37.

Fields timely filed a post-sentence motion, in which he argued the trial court unreasonably sentenced him in the aggravated sentencing range and did not consider the testimony of character witnesses at the sentencing

hearing. On direct appeal, Fields argued that the court focused solely on the seriousness of the crime and did not consider relevant sentencing factors. This Court found that those claims were distinct and the failure to specify in his post-sentence motion the precise claims that were raised on appeal resulted in waiver of this issue on appeal. *See Fields*, No. 2981 EDA 2017, 2018 WL 6582776, at *3.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Where the court has the benefit of a pre-sentence investigation report ("PSI"), we presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017).

Here, the record shows that at the beginning of the sentencing hearing, the court stated that it had reviewed the PSI and the sentencing memoranda

provided by both parties. *See* N.T. Sentencing, 5/8/17, at 3. The court also reviewed Fields' prior record score and offense gravity score. *Id.* at 3-4. The court heard from several family members and friends of Fields, as well as family members of the victim. *Id.* at 5-11, 20-31. Fields was given the opportunity to give a statement to the court, but he declined to do so. *Id.* at 32-33. The court also considered Fields' lengthy criminal history, including his 19 prior arrests, 10 prior convictions, three prior adjudications of delinquency, six prior incarcerations, and the fact he had an open bench warrant and was on probation at the time of his arrest in this case. *Id.* at 13.

The court also considered the severity and violent nature of the crime. The court remarked:

> This is a senseless, brutal, idiotic murder for no reason other than a traffic problem, a road rage incident, and you got on your vest "Enforcer 1 percent." We all know what that is about. We know what you are doing out there, and we know why you are doing that, and for that you are going to get the maximum.

*Id.* at 33.

We conclude that the record, as a whole, reflected consideration of the factors set forth in the sentencing code. The court took into consideration the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant, as required under 42 Pa.C.S.A. § 9721(b). Additionally, because the sentencing court considered the PSI, we presume the court was aware of all appropriate sentencing factors and consider the requirement that the court place its reasoning on the record to be satisfied. *See Johnson-*

***Daniels***, 167 A.3d at 26. Therefore, Fields' challenge to the discretionary aspects of his sentence, even if not waived, would have been meritless. Since this challenge would have failed, counsel could not have been ineffective for failing to pursue this claim. ***See Spotz***, 896 A.2d at 1210. No relief is due.

In his final issue, Fields argues that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in denying his challenge to juror number three during voir dire. Fields' Br. at 37. He argues that there is no indication in the record that the prospective juror assured the trial court that she could render a fair and impartial verdict or that she would have no difficulty in following the instructions of the court. ***Id.*** at 40. In his view, "[e]stablishing these two facts on the record was a condition precedent to denying trial counsel's motion to strike for cause." ***Id.*** Fields argues that since trial counsel was forced to use a peremptory challenge, "prejudice is clear on its face." ***Id.*** at 41.

During voir dire of juror number three, the following exchange occurred between defense counsel and the prospective juror:

> Q. Does the fact that a gun is involved in the case, would that affect your ability to be a fair and impartial juror at all?
>
> A. Not if it's a legal gun.
>
> Q. Not if it's a legal gun? What if you heard evidence that it was an unregistered gun? Would that affect your ability to be a fair and impartial juror?
>
> A. Well, I don't think that's right and that's part of what the problem [is] in the city, so.
>
> Q. So do you think that that alone, though, is something that would affect your ability to be fair and impartial, or

could you set that aside and judge the case based upon the facts that you heard otherwise?

A. Well, I would always have in my mind why do you have an illegal gun. You know, what good comes of that? But other than that, no.

N.T. Trial, 10/12/16, at 31-32. Defense counsel then moved to strike for cause. *Id.* at 32. The court denied the motion. *Id.* at 34. Fields peremptorily struck juror number three.

"The improper refusal of a challenge for cause is harmless error where the juror is excluded by a peremptory challenge and the defendant does not exhaust his peremptory challenges." ***Commonwealth v. Kelly***, 134 A.3d 59, 62 (Pa.Super. 2016).

Here, the record indicates that Fields did not exhaust his allotment of peremptory challenges, and Fields does not allege otherwise. Because Fields peremptorily struck juror number three without exhausting his peremptory challenges, the trial court's decision not to strike this juror did not prejudice him. ***See id.*** Accordingly, appellate counsel could not be ineffective for failing to raise this issue on direct appeal.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/2/2024</u>