J-S40030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRIAN WINTER | : | |
| | : | |
| Appellant | : | No. 2803 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 15, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004650-2017

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED MARCH 21, 2025**

Brian Winter appeals *pro se* from the judgment of sentence following his convictions for manufacturing child pornography, possession of child pornography, and criminal use of a communication facility.[1] We vacate Winter's sentence on Count 7 for filming/depicting child pornography and remand for resentencing on that count. We affirm in all other respects.

The trial court summarized the facts as follows:

> At the trial on February 22, 2022, the parties stipulated that, pursuant to a search warrant, a Samsung Model SPHL520 cellular phone owned and possessed by [Winter] was seized by police. The phone was marked and introduced as Exhibit C-1. The relevant images were recovered from [Winter's] cell phone. During the non-jury trial, this [c]ourt reviewed each of the images marked as Exhibits C-6 through C-15, C-19, C-21 through C-37, *in camera*, and concluded each marked exhibit contains distinct images of child pornography. This [c]ourt also reviewed a Report of

_____

[1] 18 Pa.C.S.A. §§ 6312(b)(2), 6312(d), and 7512(a), respectively.

> Forensic Examination of the SanDisk Micro SD card and a Digital Forensic Analysis of the phone.

Trial Court Opinion, filed 1/10/23, at 3-4 (footnotes omitted).

Prior to trial,

> [Winter] filed a [m]otion to [s]uppress the evidence in the case. On February 15, 2018, a hearing was held on the [m]otion. On March 29, 2018, this [c]ourt issued a detailed [o]rder denying the motion, including findings of fact and conclusions of law. At the [m]otion hearing, it was revealed that a search warrant was issued on April 7, 2016 to search [Winter's] cell phone for text messages in connection with a separate case. When forensic examiner Brian Knowlton began to examine the phone pursuant to the warrant, he discovered a text message containing an image of a young boy in a bathtub which appeared to be suspicious. When Mr. Knowlton looked for further data about the image such as a date and time stamp, he inadvertently discovered a second image that immediately appeared to be child pornography. Mr. Knowlton immediately stopped the examination and presented the images to Detective Mark Bucci of the Delaware County Criminal Investigation Division. Detective Bucci agreed that the image appeared to depict child pornography.

> As a result, Detective Bucci prepared a second search warrant that was approved on April 8, 2016. The second search warrant authorized the Delaware County C.I.D. Computer Forensics Unit to search the phone for any video or image files containing potential child pornography. It was during the execution of this second search warrant that the remaining image files containing child pornography were discovered.

*Id.* at 10-11 (footnotes omitted).

After a stipulated non-jury trial, the court found Winter guilty of seven counts of manufacturing child pornography, 21 counts of possession of child pornography, and one count of criminal use of a communication facility. The

court imposed an aggregate sentence of 240 months to 480 months' incarceration followed by five years of consecutive probation.

On July 25, 2022, Winter filed post-sentence motions. In August 2022, Winter's counsel filed a motion to withdraw as counsel. Winter filed a *pro se* motion to waive appointment of counsel and proceed *pro se*. A **Grazier**[2] hearing was held on September 9, 2022, wherein the court granted Winter's request to proceed *pro se* from the bench. **See** N.T., 9/9/22, at 10.[3] On September 22, 2022, Winter filed a *pro se* motion to amend post-sentence motions.[4] On September 28, 2022, the court denied Winter's counseled post-sentence motions. The court denied Winter's amended post-sentence motion on October 5, 2022. Winter then moved for reconsideration, which was denied on October 19, 2022. Winter filed a notice of appeal on November 1, 2022.

Winter raises the following issues on appeal:

1. Whether [Winter's] notice of appeal was timely filed or otherwise excused due to [a] breakdown in the court system?

_____

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

[3] The order granting Winter's motion to proceed *pro se* was not entered until September 27, 2022. The court also appointed standby counsel on that date.

[4] Winter's motion to amend post-sentence motion does not appear on the trial court's docket or in the certified record. However, Winter attached the motion to amend to the reproduced record, and it is also listed as a document that the parties agreed would be transmitted to this Court as part the trial court's order adoption of a stipulation between the parties. **See** Order, 11/6/23, at ¶ 2, Appendix A, No. 9. Moreover, the court entered an order denying the motion, implicitly acknowledging that it was properly before the trial court.

- 3 -

2. Whether the evidence was insufficient to prove beyond a reasonable doubt that any of the images in Counts 1-7 are the result of "photographing sexual acts" or that [Winter] himself committed such act(s), as a required element of 18 Pa.C.S. § 6312(b)?

3. Whether the evidence was insufficient in Counts 8-32 to prove beyond a reasonable doubt that [Winter] had "intentionally viewed or knowingly possessed" the images at issue as a required element of 18 Pa. C.S. § 6312(d)?

4. Whether the evidence was legally insufficient to prove that each of the images at issue depict a minor "engaged in or simulating a prohibited sexual act" or, in some counts, displaying the actual bare/unclothed genitalia of a minor, as a required element of 18 Pa. C.S. §§ 6312 (b) & (d)?

5. Whether the evidence was legally insufficient to prove that any of the images contained in Counts 1-32 were ever "transmitted in whole or part" and/or that any "communication facility" was ever "used" as required elements of 18 Pa.C.S. § 7512?

6. Whether the trial court erred and/or abused its discretion by denying [Winter's] objection and request to view/verify the images/sealed exhibits prior to their admission into evidence at trial and/or prior to this appeal, resulting in a violation of his constitutional due process rights?

7. Whether this Court should have remanded the case to the lower court to supplement the certified appeal record by including the omitted child porn images?

8. Whether the suppression court erred [in] denying [Winter's] motions to suppress evidence and information derived from [the] search of [Winter's] cell phone and/or the subsequent motion for reconsideration? . . . Or, in the alternative:

   A. Whether the search warrant #1 was overbroad whereby the affidavit failed to provide probable cause for [the] search and seizure of any text

messages involving any person(s) except for alleged victims' parents/guardian?

B. Whether the search warrant #1 was overbroad and/or lacked sufficient particularity whereby it failed to include a temporal limitation for text messages to be searched for and seized and there was no probable cause to justify [the] search and seizure of any text messages dated prior to 8/11/2014?

C. Whether law enforcement's search and sifting through text messages dated prior to 8/11/2014 and unrelated to the specific incident being investigated exceeded the authorized scope of search warrant #1, rendering its execution constitutionally unreasonable and any images or evidence seized thereof as being fruits of the poisonous tree?

9. Whether the sentencing court erred [in] not merging Counts 1-7, 23 [and] 27-32 and 8-17, 21, [and] 24 for sentencing purposes?

10. Whether the sentencing court erred [in] imposing the split sentence for Count 7, whose combined terms of imprisonment and probation exceed the statutory maximum permissible sentence for a [second-]degree felony?

Winter's Br. at 3-6.

## Timeliness of Appeal

We first address the timeliness of this appeal as it implicates this Court's jurisdiction. *See Commonwealth v. Williams*, 106 A.3d 583, 587 (Pa. 2014).

Generally, an appeal must be filed within 30 days of the imposition of sentence. *See* Pa.R.Crim.P. 720(A)(3). However, if a defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the

entry of the order deciding the post-sentence motion. **See** Pa.R.Crim.P. 720(A)(2)(a).

Here, Winter's prior counsel filed timely post-sentence motions. Before the court ruled on the motions, it granted Winter's request to proceed *pro se*. Winter then submitted a *pro se* motion to amend the post-sentence motions on September 22, 2022. The court denied Winter's counseled post-sentence motions on September 28, 2022, and later denied the amended post-trial motion on October 5, 2022. Since Winter filed his appeal on November 1, 2022, within 30 days of the court's final order deciding his post-sentence motions, his appeal is timely.[5] We therefore address the merits of Winter's claims.

### Sufficiency of Evidence

Winter's second through fifth issues challenge the sufficiency of the evidence. The sufficiency of evidence is a question of law. "Our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, "[w]e must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed

_____

[5] We note that Winter's notice of appeal purports to be from the October 19, 2022 order denying his motion for reconsideration of his post-sentence motions. In criminal actions, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. **See Commonwealth v. Sanchez-Frometa**, 256 A.3d 440, 442 n.2 (Pa.Super. 2021). We have corrected the caption accordingly.

in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." ***Id.*** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa.Super. 2018). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa.Super. 2017). This Court "may not substitute our judgment for that of the factfinder." ***Commonwealth v. Griffith***, 305 A.3d 573, 576 (Pa.Super. 2023).

Winter's second issue challenges the sufficiency of the evidence for his conviction for manufacturing child pornography. Winter argues that there was no evidence that he took the photographs at issue or that he was the only person to use or have access to the phone. Winter's Br. at 15. He maintains that the "mere fact that the smartphone belonged to [him] is not *per se* evidence that he photographed the subject images and the image of an unidentifiable finger . . . is not sufficient evidence that [he] took the photographs." ***Id.*** at 34 (emphasis removed). Winter points out that a person does not always use a cell phone exclusively and mere ownership of the phone is insufficient to prove he took the photographs. ***Id.*** at 36. He further argues

- 7 -

that he made no admission that he took the photographs and there was no testimony by the children in the images that identified him as the photographer. *Id.* He also claims that "the images did not include any metadata, so it is impossible to determine when and/or how they came on the device, of if they were just copies of pre-existing images[.]" *Id.* at 37.

The Crimes Code at Section 6312(b) provides: "Any person who knowingly photographs, videotapes, depicts on computer or films a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such an act commits an offense." 18 Pa.C.S.A. § 6312(b)(2). A "prohibited sexual act" is defined as "[s]exual intercourse . . ., masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." *Id.* at § 6312(g). "The purpose of Section 6312 is plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography." *Commonwealth v. Diodoro*, 970 A.2d 1100, 1107 (Pa. 2009) (citation omitted).

Here, the trial court found that the evidence was sufficient to support Winter's conviction for manufacturing child pornography. It explained:

> The Commonwealth presented seven images containing child pornography. This court viewed each of the images and was convinced beyond a reasonable doubt that the images depicted children and that they were of a prohibited sexual nature and, thus, qualified as child pornography under 18 P[a].C.S.[A.] § 6312. [Winter] stipulated that these images were recovered from his cellular phone. The images

appeared to have been taken with the cell phone and the images were saved in an ordinary picture file with no evidence of an external source. Several of the seven images depict an adult hand manipulating the clothing of child victims. The images appear to have been taken by the same person whose hand manipulates the children's clothing. The images were created with the cell phone camera that [Winter] admitted to owning and possessing.

Trial Ct. Op. at 5-6 (footnote omitted).

The record supports the trial court's findings. The images were found on the phone that Winter stipulated that he owned, and the Commonwealth admitted into evidence a forensic report stating that metadata from some of the images at issue showed that they were created using Winter's phone. **See** Cellphone Analysis Report, dated 9/19/16, at 3; N.T., 2/15/18, at 114. There was no evidence of an external source, and the photographs were not downloaded from the internet, but rather were taken by the same phone that they were stored on. The report further stated that the images were stored in an encrypted application on the phone, Keep Safe. There was sufficient circumstantial evidence to prove that Winter created the images.

Winter's third issue challenges the sufficiency of the evidence for his conviction for possession of child pornography. He argues that the Commonwealth failed to prove that he "knowingly possessed and/or viewed" any of the images that were found on his phone or was aware of the images. Winter's Br. at 46. According to Winter, the only evidence linking him to the images was the fact they were found on a cell phone that he stipulated to owning. **Id.** at 47. He reiterates that mere ownership of the phone was

insufficient to establish the conviction for possession of child pornography or prove that he knowingly participated in the crimes. *Id.* at 44, 47. Winter stresses that he never stipulated to viewing or accessing the images and did not admit any wrongdoing. *Id.* at 43. He argues that the record "contained no metadata evidence whatsoever to establish or prove when or how the images were saved on the smartphone, nor if they were ever actually 'viewed' while the device was in [his] possession." *Id.* at 46. Winter maintains that the presence of the Keep Safe app on his phone "can reasonably lead to the inference that it was downloaded/installed by another user and [Winter] was completely unaware of it, the images within it, or that [Winter] even had an ability to access the app." *Id.* at 49-50 (emphasis removed).

Section 6312(d) addresses the crime of possession of child pornography and provides: "Any person who intentionally views or knowingly possesses or controls any child sexual abuse material or artificially generated child sexual abuse material commits an offense." 18 Pa.C.S.A. § 6312(d). "Child sexual abuse material" is defined as "[a] book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under 18 years of age engaging in a prohibited sexual act or in the simulation of a prohibited sexual act." *Id.* at § 6312(g). "Intentionally views" is defined as "[t]he deliberate, purposeful, voluntary viewing of material containing an artificially generated depiction or depicting a child under 18 years of age engaging in a prohibited sexual act or in the simulation of such act." *Id.* Thus, under Section 6312(d), the Commonwealth must prove the

- 10 -

following three elements to convict an individual of this offense: "there must be a depiction of an actual child engaged in a prohibited sexual act or a simulated sexual act; the child depicted must be under the age of eighteen (18); and the defendant must have knowingly possessed or controlled the depiction." *Commonwealth v. Diodoro*, 932 A.2d 172, 173 (Pa.Super. 2007) (*en banc*) (emphasis removed).

In rejecting Winter's sufficiency claim, the trial court found as follows:

> [The] Commonwealth identified [a] cache of numerous images containing child pornography located on [Winter's] cell phone. [Winter] stipulated the cellular telephone was owned and possessed by him. The Digital Forensic Analysis prepared by the Delaware County Criminal Investigation Division on September 19, 2016 (Exhibit C-5) demonstrates an application called "Keep Safe" had been downloaded on [Winter's] cell phone. This application serves to store photos in an encrypted file only accessible to the person storing the images. The child pornography was found to be stored in this encrypted file on [Winter's] cell phone. This evidence demonstrates the user of the phone specifically sought to hide these files and make them accessible only to himself. This evidence further demonstrates [Winter] was not only aware of the images, but he made efforts to hide them in a manner making those images accessible to him, exclusively.

Trial Ct. Op. at 7-8.

We agree with the trial court that the evidence was sufficient to establish Winter knowingly possessed the images. Winter stipulated to owning the phone, and therefore, certainly had access to the images on his phone. Not only were the images found on his phone, but Winter took the additional step of storing them in an encryption app to secure privacy. There was also no evidence that anyone else had access to the phone. Viewing the facts in the

- 11 -

light most favorable to the Commonwealth and drawing all reasonable inferences therefrom in the Commonwealth's favor as verdict winner, the Commonwealth met its burden of proving that Winter knowingly possessed or controlled child pornography.

Winter next argues that the evidence was insufficient to prove that the images depicted a minor "engaged in or simulating a prohibited sexual act" as required by Section 6312(d). Winter's Br. at 51. He maintains that "[t]he language of the statute makes clear that the depictions must consist of more than mere nudity; otherwise, the inclusion of the terms 'lewd' and 'sexual stimulation or gratification' would be meaningless." *Id.* at 52 (emphasis removed). In his view, the Commonwealth failed to present evidence of his sexual gratification and the mere fact that he owned the phone was not evidence of his personal sexual gratification. *Id.* at 54.

Winter further argues that the Commonwealth failed to prove that any of the images depicted a child "engaged in or simulating a prohibited sexual act" and none of the images depicted "sexual intercourse, masturbation, sadism, masochism, bestiality, fellatio, or cunnilingus." *Id.* at 55, 56. Winter describes the images as follows:

> Beginning with C-19, which depicts a close up of a female child, approximately 8-10 years old, presumably asleep, laying on her back on the floor. She is clothed in small pajamas shorts and her legs are widened enough to expose her pink undergarment. However, her genitalia is not visible in this image. Since she's asleep, this is not an "unnatural pose" and nothing suggests "sexual coyness" or "willingness to engage in sexual activity." Since there is no nudity or

genitalia exposed, this image does not qualify as "child pornography."

Exhs. C-13-C-15 depict a fully naked female child, approximately 5-7 years old. In the images she is merely standing in a bedroom and holding up her left knee. The image's focal point is not on her genitalia or pubic area. Nothing suggests "sexual coyness" or "willingness to engage in sexual activity." She is simply a kid "goofing off." Nothing demonstrated how or if the images "stimulated" or "gratified" the view sexually . . .

Finally, Exhs. C-6-C-8, C-11 [and] C-12, depict a fully nude young female child, approximately 3-5 years old on a bed. The focal point of these specific images is not on her pubic area, although her genitalia is visible. In Exh. C-6[,] she is merely sitting back on the bed. In Exh. C-7[,] she's laying back with her head turned and a pacifier in her mouth. In Exh. C-8[,] she has both arms "covering" her face. In Exhs. C-11 [and] C-12[,] she is merely laying back on the bed. It appears the child just woke up, so she is not depicted in an "unnatural pose" or inappropriate attire, whereas many children prefer to sleep in the buff.

*Id.* at 56-58 (footnotes omitted). Winter concludes that these exhibits failed to qualify as child pornography. *Id.* at 58.

"All that the Commonwealth must prove in a situation where a defendant is found in possession of nude images of children not engaged in any other prohibited sexual act under Section 6312[(g)], is that the nudity in the image is depicted for sexual stimulation or gratification." ***Commonwealth v. Davidson***, 938 A.2d 198, 213 (Pa. 2007).[6] "[A]n ordinary person can certainly understand what conduct is prohibited and would have no need to guess at the meaning of the term 'nudity' under Section 6312[(g]." *Id.* Thus, "[t]he

_____

[6] The Court in ***Davidson*** was interpreting former Section 6312(a), which was subsequently replaced by the substantively identical Section 6312(g).

content, focus and setting of the images create an objective standard which allows a person of common intelligence to know what images are prohibited under the statute." *Id.* "[C]ommon sense and human experience dictate that an individual of ordinary intelligence, not a mind reader or a genius, can identify whether a photograph of a nude child depicts 'nudity' for the purpose of sexual stimulation or gratification." *Id.* at 214. It is within the factfinder's province to determine whether an image falls within the scope of Section 6312(g) and satisfies the "prohibited sexual act" definition contained in that provision. *Id.* at 213-14; *see also Commonwealth v. Tiffany*, 926 A.2d 503, 512 (Pa.Super. 2007) (affirming factfinder's determination that photographs at issue depicted nudity for the sole purpose of sexual stimulation or gratification).

Here, the trial court reviewed the images and concluded that they were taken for the sole purpose of the sexual stimulation and gratification of the viewer. The record supports the trial court's finding, and common sense and human experience dictate no other conclusion. The subject images focused on pre-pubescent children, who were in various stages of undress or fully nude. Contrary to Winter's contention, some of the images focused on their genital areas. Seven images also depicted an adult hand manipulating the clothing of the children. It was for the factfinder to determine whether the images depicted nudity for the purpose of sexual stimulation or gratification for convictions under Section 6312, and we will not disturb that finding. *See*

*Davidson*, 938 A.2d at 213-14; *Tiffany*, 926 A.2d at 512. Accordingly, Winter is due no relief.

Winter next argues that the evidence was insufficient to support his conviction under Section 7512 for criminal use of a communication facility. He maintains that the fact that a smartphone device is used to store contraband is insufficient to establish that the device had been used as a "communication facility" as defined by the statute, which includes the "transmission" of images. *Id.* at 63-64. Winter points out that his phone was used both as a communication device and a camera. *Id.* at 61. He argues that Section 7512 "only criminalizes the use of the communication device contained inside the smartphone, not the purported use of its camera feature," and "[t]he Commonwealth did not present any evidence that the device's communication feature had been used to facilitate any crime[.]" *Id.* at 61-62 (emphasis removed).

The Crimes Code at Section 7512 provides: "A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title[.]" 18 Pa.C.S.A. § 7512(a). A "communication facility" is "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail." *Id.* at § 7512(c). Thus, the statutory definition

of "communication facility" includes a phone. The elements of the offense of criminal use of a communication facility are: (1) that the defendant knowingly and intentionally used a communication facility; (2) that the defendant in that use of a communication facility knowingly, intentionally, or recklessly facilitated an underlying felony; and (3) that the underlying felony occurred. **Commonwealth v. Moss**, 852 A.2d 374, 382 (Pa.Super. 2004).

Because we previously found that the evidence was sufficient to find Winter guilty of manufacturing and possessing child pornography, the evidence also supported a finding that he was guilty of criminal use of a communication facility. Winter's phone was a "communication facility" as defined in the statute, and was used to manufacture and possess child pornography, which are felonies. This claim fails.

**Viewing of Exhibits**

Winter argues that the trial court erred in denying his request to review the sealed exhibits containing the images prior to their admission into evidence in violation of his constitutional due process rights. He asserts that although in discovery he was permitted to view and take notes of the 154 images that were purportedly recovered from his phone, the Commonwealth presented only 25 of those images at trial and they contained a different unique identifier number than the numbers he was provided in discovery. Winter's Br. at 67. Winter was concerned that the images presented at trial might not have been the images he was shown in discovery, so he objected and requested to be present during the *in camera* viewing at trial. *Id.* at 67-

68. On appeal, he alleges that the denial of his request was erroneous and deprived him of due process.

The trial court addressed this issue as follows:

> Prior to the trial, [Winter] was given the opportunity to review and inspect each of the exhibits in the presence of his attorney. He was afforded the opportunity to take notes. During the trial, the court reviewed the images in the presence of counsel for each party while on the record in the robing room to protect the victims. The images viewed by the court *in camera* during the trial were the same images as those inspected by [Winter] prior to the trial. A unique identifying number sequence was assigned to each image during the discovery stage. Of the counts for which [Winter] was convicted, his attorney was able to confirm during the *in camera* review that the numbers corresponded to the number assigned to the images that were displayed to [Winter] in pretrial discovery. In short, these images were the same images [Winter] was given an opportunity to view before trial. Given the sensitive nature of the images and the fact that the images themselves are contraband, this [c]ourt found it unnecessary to permit [Winter] to view the images again while they were published to the court. The images were admitted by agreement of the parties and [Winter] stipulated to their authenticity through counsel. [Tr. 2/22/22, p. 90, line 23 through p. 91, line 1]. Because [Winter] had the opportunity to inspect the images pretrial in the preparation of his defense, and his attorney was present in the robing room during the *in camera* review, [Winter] suffered no prejudice.

Trial Ct. Op. at 9-10.

The record supports the trial court's analysis. Winter viewed the images during discovery. At trial, the Commonwealth represented that the images presented at trial were the same images given to Winter in discovery. **See** N.T., 2/22/22, at 97. Defense counsel also stipulated to the authenticity of the

images and was present in the robing room when the court viewed the images. *Id.* at 90-91, 100. The court properly denied Winter's request to review the images again at trial. *See Davidson*, 938 A.2d at 219 (concluding that "each image of child pornography creates a permanent record of a child's abuse, which results in continuing exploitation of a child when the image is subsequently viewed").

**Request to Supplement Record**

Winter argues that this Court should have granted his request to remand to the trial court to supplement the record to include the exhibits of the child pornography images.

On February 22, 2023, Winter filed an application for relief in this Court that requested leave to correct/supplement the record. This Court denied Winter's request "without prejudice to [Winter's] right to apply to the trial court to correct the docket entries and to transmit a supplemental record containing documents and exhibits." Order, 3/15/23. Winter filed an application for leave to supplement the certified appeal record in the trial court. The trial court held a hearing on Winter's application on July 21, 2023. After the hearing, the parties entered into a written stipulation that set forth which trial records were to be located and transmitted to this Court. The last paragraph of the stipulation stated that the parties agreed that no images would be transmitted in the certified record unless this Court directed otherwise:

> At the direction of the Prothonotary of the Superior Court, Eastern District, no pictorial or imagery evidence/ exhibits or sealed evidence/exhibits shall be transmitted to the Pennsylvania Superior Court, including, but not limited to: images entered as exhibits in pretrial hearings or images and the Samsung cellular phone entered as exhibits at trial; but, rather, shall remain impounded under seal at the Common Pleas Court unless otherwise ordered or directed by the appellate court.

Stipulation, filed 11/13/23, at ¶ 7.

On November 20, 2023, Winter filed an amended application for relief in this Court requesting that the record be supplemented with the child pornography images. This Court denied the application on December 19, 2023. On January 2, 2024, Winter filed an application for reconsideration of this Court's December 16, 2023 order. On January 30, 2024, we denied Winter's application for reconsideration.

This Court already disposed of Winter's amended application for relief and application of reconsideration, and we are bound by this Court's previous orders. Further, Winter entered into a stipulation with the Commonwealth wherein the parties agreed that the images would not be transmitted to this Court. Moreover, Winter has offered nothing more than his flat insistence that this Court could not properly review his issues without the photos – a proposition with which we disagree – and has therefore failed to show that the record ought to have been supplemented.

### Search Warrant

Winter argues that the trial court erred in denying his motion to suppress information derived from the search of his phone. He claims that the

search warrant issued on April 7, 2016 ("Warrant #1") was overbroad and lacked probable cause.

Warrant #1 was issued in an unrelated case wherein Winter was being investigated for the sexual assault of two 14-year-old girls. The warrant sought to search Winter's phone for any text messages between his phone and the victim's mother. As previously explained, it was during this search that forensic examiner Brian Knowlton discovered a text message containing an image of a boy in a bathtub.

Warrant #1 identified the item to be searched and seized as follows: "Samsung Galaxy Cell phone Md1. SPH-L520 UD, which contains text messages sent and received between [victim #1's] mother and cell phone number 610-[redacted] as well as anyone else involved in this investigation to include family members, friends and acquaintances of victim(s)." Search Warrant, 4/7/16, at 1. Winter argues that the warrant's language – "as well as anyone else involved in this investigation to include family members, friends and acquaintances of victim(s)" – is overbroad. Winter's Br. at 87. While he concedes that Warrant #1 provided probable cause to search his phone for text messages with the victim's mother, he argues that "there was no information to even suggest [his] phone was used to communicate with any other person who may be involved, rendering it a fishing expedition." *Id.* at 86-87 (emphasis removed).

Winter further argues that while Warrant #1 contains the dates of the violation as "08/11/2014 - 08/12/2014," the warrant fails to provide any

temporal limitation for the text messages to be searched on his phone. *Id.* at 90. He also contends that Knowlton's search of his text messages dated prior to August 11, 2014, and unrelated to the incident being investigated, exceeded the authorized scope of Warrant #1 and rendered its execution constitutionally unreasonable and any evidence seized was fruit of the poisonous tree. *Id.* at 92. Winter asserts that Knowlton only had authority to seize the unrelated text message and not conduct a further search of the phone. *Id.* at 113.

When reviewing the denial of a motion to suppress, we determine "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (citation omitted). Where the Commonwealth prevailed on the motion, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." *Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa.Super. 2022) (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Id.* (citation omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa.Super. 2018) (citation omitted). Where the factual findings of the court

- 21 -

are supported by the record, we will only reverse if there is an error in the legal conclusions drawn from those factual findings. *McMahon*, 280 A.3d at 1071.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. Except where an exception applies, "a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause." *Commonwealth v. Lyons*, 79 A.3d 1053, 1063-64 (Pa. 2013). "[T]he totality of the circumstances set forth in the affidavit [of probable cause] must be considered when examining whether probable cause supports the issuance of the search warrant." *Commonwealth v. Harlan*, 208 A.3d 497, 505 (Pa.Super. 2019) (quotation marks omitted). "[P]robable cause is based on a finding of the probability, not a *prima facie* showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." *Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa.Super. 2013) (citation and brackets omitted; italics added). We limit our review to the four corners of the affidavit. *Id.*

"[A] warrant must name or describe with particularity the property to be seized and the person or place to be searched." *Commonwealth v. Orie*, 88 A.3d 983, 1002 (Pa.Super. 2014) (citation omitted). A warrant is not sufficiently particular if it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's

possessions to find which items to seize." ***Commonwealth v. Green***, 204 A.3d 469, 480 (Pa.Super. 2019) (citation omitted). "However, search warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." ***Commonwealth v. Kane***, 210 A.3d 324, 332 (Pa.Super. 2019) (citation and internal quotation marks omitted). "This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." ***Id.*** (citation omitted).

A warrant must also not be overbroad. ***Commonwealth v. Ani***, 293 A.3d 704, 716 (Pa.Super. 2023). A warrant is overbroad if it "allows authorities to seize items for which probable cause does not exist[.]" ***Id.*** "The overbreadth doctrine applies equally to a search of digital space [such as a cell phone] as it does for a physical search." ***Commonwealth v. Moser***, 283 A.3d 850, 857 (Pa.Super. 2022) (citation and internal quotation marks omitted). An overbreadth challenge, however, "fails if a warrant for a search of an entire digital device has 'self-limiting language' that allows police to search only for evidence of the crime for which there is probable cause." ***Id.***

The court found that sufficient probable cause existed in Warrant #1 and credited Knowlton's testimony. It stated:

> Mr. McCollum, [Winter's] expert witness, testified consistently with Mr. Knowlton, the Commonwealth's expert, the picture of a boy in a bathtub was observed in the MMS messages. Mr. Knowlton testified he knew he had to prepare a report in this case and wanted as much information as possible regarding this image. For this reason, Mr. Knowlton "opened up" the images section and made all the images viewable as thumbnails to permit him to easily identify the picture of the boy in the bathtub. Mr.

- 23 -

> Knowlton candidly and credibly testified that, at the time he made the viewable thumbnails, he was specifically attempting to identify the time, date and location stamp for this one image and not looking for any other evidence. On behalf of [Winter], Mr. McCollum testified that, although he would have exported the image and proceeded to search for identity information in a different manner, Mr. Knowlton's procedure to identify the time, date and location of the image is a technically correct procedure. It was only when Mr. Knowlton was searching for this image-identifying information about the picture of the boy in the bathtub that he inadvertently discovered another image — an image depicting a minor female child's vaginal area — which he believed to be pornographic in nature. Mr. Knowlton testified that, upon discovering this minor female's image, he stopped his search and called Detective Bucci. Detective Bucci prepared the second Search Warrant, Exhibit C-3, in an effort to search the cellular telephone for additional images, if any existed.

Trial Ct. Op. at 19-20.

The record supports the court's findings, and we will not disturb its credibility determinations. **Byrd**, 185 A.3d at 1019. The search warrant specifically identified that the search was being requested for Winter's Samsung Galaxy cell phone and the affidavit of probable cause attached to the warrant limited the search to "cell phone logs showing sent and received calls and messages . . . relevant to this investigation and prosecution, since said logs will show direct affiliation to [victim's] mother's cell phone with date/time stamps." Search Warrant and Affidavit, 4/7/16, at 1, 3. Thus, the affidavit of probable cause contained sufficient limiting language to prevent rummaging and to permit the police to search only for evidence of the crime for which there was probable cause. **See Moser**, 283 A.3d at 857. During this

lawful search, Knowlton testified that he saw a picture of a boy in a bathtub, and upon further investigation of that picture, he inadvertently saw the pornographic image of a young girl while the camera roll of the phone was in thumbnail mode. The court credited this testimony. Since the warrant was not overbroad and was supported by probable cause, the court did not err in denying Winter's motion to suppress.

## Sentencing

Winter's final two claims are challenges to his sentence. First, Winter argues that the counts for manufacturing child pornography should have merged with the counts for possession of pornography. Winter asserts that the Commonwealth failed to "distinguish the offenses by showing the crimes were separated by time or location or by otherwise demonstrating that [Winter] formed a new intent to each image." Winter's Br. at 121.

The Sentencing Code governs merger for sentencing purposes and provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Therefore, crimes do not merge for sentencing purposes unless: "1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory

elements of the other." **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009).

"[E]ach image of child pornography possessed by an individual [is] a separate, independent crime under Section 6312(d)." **Davidson**, 938 A.2d at 219. This is so because each time a child is photographed in this context, that child is violated and victimized, and creation or possession of each image constitutes a separate criminal event. **Id.** Thus, an individual may receive separate sentences for each image of child pornography. **See id.** at 218 (affirming imposition of 28 sentences for possession of 28 images of child pornography and finding that "the merger doctrine is of no benefit to appellant because a plain reading of the statute makes it apparent that the General Assembly intended possession of each pornographic image as a discrete and separate criminal act under Section 6312(d)"); **see also Commonwealth v. Koehler**, 914 A.2d 427, 439 (Pa.Super. 2006) (affirming 14 consecutive sentences for 14 videos of child pornography and finding merger doctrine inapplicable).

In the instant case, each image that Winter manufactured and possessed of child pornography was a separate and independent crime. Thus, the merger doctrine affords Winter no relief.

In his final issue, Winter argues that the court erred in imposing a split sentence for Count 7 for filming/depicting child pornography because it exceeded the statutory maximum permissible sentence. He notes that the trial court sentenced him to four to eight years of incarceration followed by five

years of consecutive probation on Count 7, which was properly graded as a second-degree felony. Winter's Br. at 126-27. He argues that the sentence amounts to a combined 13 years of incarceration and probation, which exceeds the 10-year statutory maximum sentence for a second-degree felony. *Id.* at 127. As a result, he maintains that his sentence on Count 7 was illegal.

The trial court concedes that Winter is correct and his total sentence of 13 years on Count 7 was an error. *See* Trial Ct. Op. at 22. The trial court requests that the case be remanded to correct the sentence on Count 7. *See id.* at 23. We are likewise in accord, and therefore vacate Winter's sentence on Count 7 and remand for resentencing.

Convictions affirmed. Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing in accordance with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025